### BARRETT *et al. vs.* POWELL, agent.

Where certain executions (amounting to much more than $250.00) belonging to the plaintiff were turned over to the defendants to be used for their benefit while unpaid, and it was stipulated that the defendants should, at their own expense, collect them if practicable, and that "should they succeed in making all or any part of the full value of the said executions, then and in that event they shall turn over the amount secured and collected to the said (plaintiff) in liquidation of these executions; but if after due effort on the part of said (defendants) to secure the value of the executions, they shall

fail to get all or any part thereof, then and in that event the said (plaintiff) agrees to take from the said (defendants) $150.00, due from this date, with twelve per cent. interest from this date till paid, which amount of $150.00 the said (defendants) hereby agree to pay to the said (plaintiff):"

*Held,* 1. That, *prima facie,* the plaintiff was not entitled to $150.00 in addition to a collection of $250.00 made by the defendants on the executions.

*Held,* 2. That the contract is ambiguous, and that evidence, if offered, may be received to illustrate the true meaning of the parties.

Contracts. Ambiguity. Evidence. Before Judge SIM-MONS. Pike Superior Court. April Term, 1879.

Reported in the opinion.

HUNT & TAYLOR, for plaintiffs in error.

B. M. TURNER, for defendant.

BLECKLEY, Justice.

In September, 1878, Powell, agent of Mrs. Mitchell, sued Barrett and Slade in assumpsit on the following instrument: " Georgia, Pike county. This agreement entered into this day, between R. J. Powell as agent for Jane L. Mitchell, administratrix with the will annexed, on the estate of Samuel Mitchell, deceased, of the one part, and Thos. J. Barrett and S. G. Slade, of the other part, witnesseth that whereas the said Jane L. Mitchell holds two *fi. fas.,* Nos. 10 and 29, issued from Pike superior court, against James C. Stegur, which have been levied upon lot of land containing one hundred and ninety-five acres, of lot No. 40, in the 9th district of originally Monroe, now Pike county, and whereas T. J. Barrett and S. G. Slade hold a warrantee deed from Mrs. Stegur to the said land; therefore, it is agreed that the said Barrett and Slade shall have the benefit of the said described executions in paying for said land, which is to be sold by the sheriff of Pike county this day under said executions, provided they shall buy the land at said

sale, upon the following conditions, viz: that they shall use diligent effort and employ all legal means in their power to secure themselves and the said Mrs. Mitchell against all loss under the said executions, and in prosecution of this case they agree to enjoin certain moneys placed in the hands of J. B. Hanson for Mrs. Stegur, and employ all other means in their power now or hereafter to indemnify themselves against any loss in the case. Should the said Barrett and Slade succeed in making all or any part of the full value of the said executions, then and in that event, they shall turn over the amount secured and collected to the said Jane L. Mitchell in liquidation of these executions; or if they shall fail to use due effort as described above to make the money, then they shall indemnify the said Mrs. Mitchell against loss on said executions. But if after due effort on the part of the said Barrett and Slade to secure the value of the executions, they shall fail to get all or any part thereof, then and in that event, the said Jane L.- Mitchell agrees to take from the said Barrett and Slade one hundred and fifty dollars, due from this date, with twelve per cent. interest from this date till paid, which amount of one hundred and fifty dollars the said Barrett and Slade hereby agree to pay to the said Jane L. Mitchell; and they further agree to pay all fees, costs and expenses accruing to or against the said J. L. Mitchell in this case. In witnes whereof they, the said R. J. Powell, T. J. Barrett and S. G. Slade, have hereunto set their hands, this the third day of June, 1873." (Signed) "R. J. Powell, for J. L. Mitchell. T. J. Barrett, S. G. Slade."

Indorsed upon the same: "Received on within contract one hundred and fifty dollars principal and eight sixteen one-hundredths dollars interest. December 8, 1873. R. J. Powell."

The breach alleged in the declaration was, that at the April term, 1878, of Pike superior court, Barrett and Slade collected by reason of said injunction the sum of three hundred and fifty dollars, which they have failed and refused to pay over in accordance with the tenor of said contrcat

At the trial it was admitted that the defendants had received two hundred and fifty dollars on the executions, which money was in the hands of Hanson at the time the contract was made. It was also admitted that the executions were for a much greater amount than that sum. Counsel for the defendants contended that by the terms of the contract, the plaintiff could elect to take either the one hundred and fifty dollars, or the money collected on the executions, and that having accepted the former he was not entitled to recover the latter. The court charged the jury that the plaintiff could recover all that the defendants had received on the executions; and the jury accordingly found for the plaintiff two hundred and fifty dollars, with interest from April 12th, 1878. The defendants assign the charge of the court as error, and say that it was founded on a misconstruction of the contract.

It is clear that the fruits of success, whatever they might be, were to go to Mrs. Mitchell; and it is equally clear that total failure would entitle her to the $150.00, with interest thereon at the stipulated rate; but what is to be the consequence of success in part and failure in part, the contingency which has actually happened? · The plaintiff contends that the failure to collect any part, though the whole with the exception of that part be collected, is a failure to " get all or any part ;" the defendants contend that the collection of any part negatives a failure to "get the whole or any part." The former would treat any failure, however slight, as if there were no success; the latter, any success, however slight, as if there were no failure. Between these two extreme positions, there is a middle one, which the language of the contract, as a whole, suggests and seems to countenance; and this we adopt as the *prima facie* meaning, subject to be varied on a future trial by extrinsic evidence, should any be introduced. There is manifestly a patent ambiguity, and that, according to the Code, §3801, is explainable by evidence, written or parol, from the outside. The case is presented here with no extrinsic aid whatever,

and the best opinion we can form of the true spirit and intent of the contract is this : There was a purpose to make Mrs. Mitchell secure of as much as $150.00, with the specified rate of interest on that sum, and she was to have besides all in excess of that amount that might be realized on the executions. That she was to have that much at all events, is obvious, notwithstanding the stipulation, that "should the said Barrett and Slade succeed in making all or any part of the full value of the executions, then and in that event, they shall turn over the amount secured and collected, to the said J. L. Mitchell *in liquidation* of these executions." This stipulation, standing alone, would entitle her to nothing but what might be realized on the executions, however trifling a sum that might be ; but by looking to the $150.00 provision as a central idea in the contract, we arrive at the conclusion that had the collections failed to yield as much as $150.00, with the agreed interest thereon, the fact that something was collected would not make her situation worse than it would be if nothing were collected, and so, to prevent that result, enough would have to be paid to her by the defendants out of their own means to piece out or supplement the collections accordingly ; that is, the difference between, say, $100.00 (supposing that to be the total of collections) and $150.00, with the agreed interest, would have to be made good by the defendants. On the other hand, we think the same central idea will prevent a construction of the subsequent stipulation, viz : that if "they shall fail to get all or any part thereof" then and in that event they agree to pay $150.00, etc., in a way to subject the defendants to the payment of the whole $150.00 in addition to what they might collect and pay over. It is hardly reasonable to suppose that the defendants were intended to pay just the same amount (no more and no less, if they made a complete failure as if they made but a partial failure. Had they collected nothing whatever (with no default as to proper effort) the $150.00, with the agreed interest, would have been the measure and limit of their liability.

This being so, it is in a high degree improbable that the very same measure was intended for a failure to collect a balance of a few dollars only. There is no indication in the terms of the instrument that this $150.00 provision was inserted as a penalty clause. It seems to us rather to embody the minimum compensation which the defendants were to guaranty for the executions, and to contemplate compensatory objects only, and nothing in the nature of forfeiture. We have a very decided conviction that the court below misconstrued the contract, and that it was error to allow a recovery of the whole $250.00 collected, making no deduction for the $150.00 which the defendants had already paid out of their own means. The acceptance of that payment, however, was no new contract or waiver, and no election to renounce the proceeds of collections. The defendants could not, in any event, have gotten clear of the contract with a less sum than they turned over; and if (as they did) they chose to advance it before realizing anything on the executions, and when it was not ascertained that nothing could be realized, the choice of the time was their voluntary act, and the retention of the $150.00 out of the collection subsequently made is all they have a right to ask.

Judgment reversed.