BROWN *v.* DOANE.

1. If by a false and fraudulent oral promise which he intends at the
   time of making it afterwards to violate, the vendee of two con-
   tiguous parcels of land which he has contracted for by separate
   and distinct contracts, induces the vendor to convey to him both
   parcels by one and the same absolute unconditional deed, he pay-
   ing for one parcel, but not for the other, equity by reason of his
   fraud will fasten upon him a constructive trust in behalf of the
   vendor as to the parcel not paid for, although the two parcels are
   not described in the deed as several tracts but both together are
   treated as one tract.
2. Whether a written undertaking to pay for land when the vendor
   produces and puts in the hands of the vendee a complete chain of
   paper title from the State down to the vendor imports a duty in
   the vendor to make efforts to procure such a title to be executed
   if it does not already exist, open to explanation by parol evidence,
   the language of the instrument being ambiguous.
   October 13, 1890.

Equity. Contracts. Vendor and purchaser. Fraud.
Trusts. Evidence. Before Judge MARSHALL J. CLARKE.
Fulton superior court. March term, 1890.

Mrs. Brown by her petition alleged, in brief, that
about August 15, 1887, she executed a conveyance to
E. A. Doane to sixty acres of land; that the convey-
ance was conditional as to five of the acres, and she re-
ceived from Doane, at the same time she made the deed
to him, a writing reciting that he had that day pur-
chased from her her home plantation, to which she had
made him a deed, and that he agreed to pay her $200
without interest whenever she placed in his hands a
good chain of title in fee simple, from plat and grant down
and into her, of five acres of the land, describing it; that
the writing contained a stipulation that it was not to
be transferred to any one, and payment was to be made
only when the conditions for which it was given were
strictly complied with; that she had, in good faith,
complied with her part of the contract as to the five
acres, having delivered to Doane the chain of title

possessed by her, but with this he pretended to be dissatisfied and refused to accept it, and upon such refusal she demanded that he deliver up the deed which she had executed to him, or make to her a conveyance of the five acres, or pay her the $200, but he refused all these propositions; that under her deed and his obligation to her, and the agreement of the parties at the time of the transaction, Doane was not to become the purchaser of the five acres, which was under a different chain of title from the rest of the land, unless within a reasonable time she had furnished him a satisfactory chain of title, and the five acres were to be conveyed back to her within a year, and it was upon the faith of this parol understanding that she executed her deed; and that this outstanding deed is a cloud upon her title to the property. She prayed that the court order Doane to convey back to her the five acres. By amendment she alleged that before she filed her petition, and after defendant had for many months refused to pay for the five acres, she procured her attorney to call upon him and insist upon his paying the note, or conveying back the five acres, but defendant refused to comply with either request and referred the attorney to his agent, John A. Doane, who insisted that the defendant should keep the land as well as not pay the note. This last conduct has proved conclusively that the Doanes meant to defraud her in the beginning. They objected to her title to the five acres and she did not want to make a deed to the same, but they insisted on its being made, and then instead of paying her for it drew up the writing from Doane to her above referred to, with impossible conditions. She procured and delivered the best title she could, being that upon which she bought and paid for the land, but defendant refused to pay, etc.

Upon the trial the plaintiff introduced the deed mentioned above, and the written agreement given to

her by Doane cotemporaneously with the execution of
the deed.   Her attorney testified that, before the bring-
ing of the suit, he had several conferences with defend-
ant and his agent; that he asked defendant to pay the
note but he declined to do this, saying that Mrs. Brown
had not produced the plat and grant from the State
down; that he asked defendant to deliver up the land,
but this defendant declined to do and referred him to
John A. Doane; that he showed John A. such deeds
as plaintiff was able to produce, and John A. said per-
haps defendant would waive the plat and grant if witness
could get certain other deeds, but these deeds plaintiff
never had.   Plaintiff here proposed to show by this
witness what efforts she had made to ascertain her
chain of title, which the court declined to hear.   The
plaintiff testified that the five acres in dispute were
under a different chain of title from the remainder of
the tract, and defendant did not seem to be satisfied
with it; that at the time of drawing the deed, he drew
up the other writing and gave it to her; that in August,
1887, he took possession, and has been in possession
ever since, of the entire tract, the fifty-five acres being
well improved and the five acres unimproved; that she
was paid for the land $2,200, $200 being held out for
the five acres, which she has never received.   She pro-
posed to testify further that the sale of this land was
expressed by the parties to be at $40 per acre; that be-
fore the making of the deed, defendant agreed that in
case she failed to obtain after reasonable search the plat
and grant from the State down and into herself, he
would return the land to her; that the deed to the en-
tire tract was made for the sake of convenience as to
these five acres, and on the faith of defendant's under-
taking that if the title should not prove as he had speci-
fied in the writing he gave her, the land would be re-
turned to her; that the contract as to this five acres

was separate and distinct from the remainder of the land, and it was with this understanding that the conditional agreement was signed; that she had made every effort in her power to get the plat and grant from the State down, but had failed and had so informed him, and it was impossible for her to get it ; and that she merely allowed him to go into possession of these five acres with the rest of the tract. The court refused to hear this evidence also. Plaintiff offered to show by another witness that she, her grantor and the grantors of her grantor, had been in possession under deeds, openly, notoriously and adversely for twenty years. This the court refused to admit in evidence.

Plaintiff then tendered the amendment quoted in the opinion, but the court declined to allow it; and on motion of defendant, granted a nonsuit. Plaintiff excepted.

Arnold & Arnold, for plaintiff.

Rosser & Carter, for defendant.

Bleckley, Chief Justice.

Mrs. Brown, by warranty deed absolute in terms, expressing a consideration of $2,400 in hand paid, conveyed to Doane in fee simple, as one tract containing 60 acres more or less, parts of land lots Nos. 94 and 99 in the 14th district of Fulton county. Doane at the same time delivered to her his written obligation reciting that he had purchased her home plantation near Hapeville, to which she had made him a deed, and proceeding as follows :

"I hereby agree and bind myself to pay to Mrs. Sudie C. Brown the sum of $200 without interest, whenever she produces and places in my hands a good chain of title in fee simple from plat and grant down and into Mrs. Sudie C. Brown of the five acres of land on land lot number 94 . . which is embraced in said Mrs. Sudie C. Brown's deed to me. This note is not to be transferred to any one, and to be paid only when the

conditions for which said note is given are strictly complied with."

This sum of $200 added to $2,200 actually paid would be requisite to make up the amount expressed in the deed as the consideration. The parties differing as to the sufficiency of the chain of title which Mrs. Brown afterwards presented to Doane, and he refusing to accept the same, and also refusing to pay the balance of the purchase money or to surrender the five acres of land, she filed her petition in the nature of a bill in equity, to compel him to do one or the other of these things. She alleged in her petition as amended, in substance, that before and at the time the deed was executed, he promised and agreed that he would restore to her the five acres of land (of which at the time of the conveyance he had obtained possession as a part of the tract), in case she could not produce the chain of title described in his obligation. The case coming on for trial, and some of her evidence being introduced, and more offered but excluded, she proposed to still further amend the petition by adding the following in substance:

"Petitioner avers that at the time of and before the deed from herself to Doane was made, he promised and agreed to return the five acres in land lot 94, in case it developed that petitioner could not procure a plat and grant from the State down. On the faith of said agreement to return back the five acres in case it turned out, after a reasonable search, that petitioner had no plat and grant from the State down, petitioner made the deed to said five acres together with the other fifty-five acres, and she would not have made such deed except on the faith of said agreement. The five acres was not paid for and has never been. The contract as to the five acres was separate and distinct from the sale of the 55 acres. Petitioner has made every effort to obtain such title, but as it was not in existence, she was not able to find it. Defendant, though requested, failed to return the land. The promise and failure to return the

land constitute a fraud on the part of defendant, whose original design was fraudulent. Said original representation was made with intent to induce petitioner to make such absolute conveyance, and with the intention of holding said land after such conveyance was made. Petitioner further avers that the deed and note constitute an ambiguous contract, and that the parol agreement was, that in case she could not, after a reasonable search, obtain the required title, the land was to be returned and conveyed back to her. She avers that she retained the beneficial interest in the land, and prays that a resulting trust and a conveyance to her be decreed."

The amendment was disallowed, and the plaintiff offering no more evidence, the court granted a nonsuit. For a more enlarged statement of the facts, see the official report.

1. The bill of exceptions assigns several errors, but at this stage of the proceedings, it is necessary for us to deal specifically with only one of the assignments. We think the court erred in disallowing the amendment, and consequently that the trial was conducted throughout on a misapprehension of the law applicable to the case. The amendment alleges that the purchase of the five acres was made by a separate contract, and that this part of the tract was included in the deed by reason of Doane's promise and undertaking to restore it if the plaintiff could not produce the title papers stipulated for, and that he made the promise to induce the plaintiff to execute such absolute conveyance and with the intention of holding the land after such conveyance was made. This virtually charges him with actual fraud and deceit, not only in violating the parol promise relied upon, but in making the same. If he procured the conveyance of these five acres by means of a wilful and intentional fraud, equity will lay hold of his conscience and compel him to perform his promise, notwithstanding it was made orally and never reduced to

writing. There is no law which requires a fraudulent undertaking to be manifested by writing. Those who use promises, which they make deceitfully, for the purpose of accomplishing fraudulent designs, are generally careful not to furnish written evidence of their turpitude. Such promises, whatever may be their terms, do not, unless reduced to writing, raise express trusts, but the law, acting upon them according to their nature, makes them a basis upon which to build up in favor of the defrauded party an implied or constructive trust. Code, §§3194, 2316, par. 2. " A second well-settled and even common form of trusts *ex maleficio* occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, as for example a promise to convey the land to a designated individual, or to reconvey it to the grantor, or the like, and having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained, is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfil the trust by conveying according to his engagement." 2. Pomeroy's Eq. Jur. §1055. " In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated." *Id.* §1656. The distinction between making a promise with intention to break it and a mere breach of a promise not fraudulent in itself, is well brought out by the cases of

Manning v. Pippen, 86 Ala. 357, and Brock v. Brock (Ala.), 8 So. Rep. 11, read in connection with Patton v. Beecher, 62 Ala. 579. Nothing contrary to the principle of these authorities was cited in the argument. The case of Stillman v. Canales, 25 Tex. 313, 78 Am. Dec. 530, read by the learned counsel for defendant, was an action at law for the purchase money and involved no question as to the effect of fraud committed at the time of passing the legal title. The same may be said of Runkle v. Johnson, 30 Ill. 328, 83 Am. Dec. 191, and Hall v. McArthur, 82 Ga. 572. Nor was there any question of fraud involved in Gilbert v. Peteler, 38 N. Y. 175, 97 Am. Dec. 785.

2. The petition and amendments proceeded upon a construction of the obligation of Doane to pay the $200, which may or may not be correct. The terms "whenever she produces and places in my hands a good chain of title in fee simple from plat and grant down and into Mrs. Sudie C. Brown," seem to us ambiguous. The plaintiff construes them as not contemplating anything to be done on her part to procure such a title, but only to discover and produce it in case it was already in existence when this transaction took place. Should this construction prove incorrect, it may be that, even if a fraud upon her was designed in the beginning, she could not rightfully reclaim these five acres of land until she had made diligent and faithful effort, without success, to procure and produce such a title, though it may not be yet in existence. We doubt not that, under the provisions of our Code, §§2757, 3801, extrinsic evidence would be receivable to aid the court and jury in arriving at the true meaning of this ambiguous language. Mason v. Deese, 30 Ga. 308; Barrett v. Powell, 63 Ga. 552.

The court erred in disallowing the amendment, and consequently in granting a nonsuit.

*Judgment reversed.*