27912.   CORDOVANO *v.* THE STATE.

DECIDED JANUARY 31, 1940.

*B. J. Dantone, James R. Venable,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, Quincy O. Arnold,* contra.

MacINTYRE, J. The indictment charged the defendant P. Cordovano, Mrs. P. Cordovano, Herbert Stone alias Louis Gold, and Larry Bond "with the offense of larceny after trust; for that said accused, . . having been then and there entrusted by Andre Wallach, with the sum of sixteen hundred ninety and no/100 ($1690.00) dollars in money of the value of sixteen hundred ninety and no/100 ($1690.00) dollars and the property of said Andre Wallach, did, after having been so entrusted, wrongfully, fraudulently, and feloniously convert said sum of money to their, the accused's, own use." It appears from the evidence that Andre Wallach planned a trip abroad, and left with his secretary, Mr. Rice, certain money for the purpose of being applied for the owner's use and benefit, which was in no way connected with the defendant. Several days after Mr. Wallach left town, his office was contacted by telephone and the person giving his name as "Mr. Harrison" talked to the secretary, Rice, and asked him whether or not he had received a certain package which was to be delivered by Rice to the caller. By said telephone call Rice was made to believe that his employer would receive $2200 from the caller, Mr. Harrison, for the package. On the day after this call, a fake radiogram was sent to Rice, purporting to come from Andre Wallach from the S. S. Normandie, sailing at sea, requesting said secretary to turn

over to a Mr. Book $1690, and in return therefor receive a package which was to be thereafter turned over to Harrison (who made the telephone call), from whom he (the secretary) would receive the aforementioned $2200. Said secretary was informed in said radiogram to handle the matter in strictest confidence. Later it developed that this was a fictitious and fake radiogram and telephone call, and the money was paid out to defendant and others under said scheme, which is known as the "telegram racket," or fraud, and which is not bona fide. The package turned out to be sugar, and the money was never accounted for or returned. A short time thereafter all of the named defendants except one, all of whom participated in the said scheme, were arrested in New Orleans, and the present defendant was in some way connected with an almost identical scheme in that city. The defendant was convicted of larceny after trust, and given a sentence of three to five years. He filed a motion in arrest of judgment, which was overruled. He excepted to that ruling and to the overruling of his motion for new trial.

■ The defendant contends that neither the indictment nor the proof shows that he held the money in trust for the prosecutor; and that if he was guilty of any crime, as made out by the State, it was simple larceny instead of larceny after trust. Unquestionably the agent, Rice, held the money in question as trustee for the victim, Wallach. The money so held was to be used for certain specified purposes which were in no way connected with the defendant. The Code, § 108-416, declares: "The purchaser from a trustee, with actual or constructive notice of the trust, shall hold as trustee for the beneficiaries; if the purchase is bona fide and without notice, the purchaser shall hold the property freed from the trust." In this case, if the defendant, by a trick or a fraud or other wrongful act, obtained money from the trustee of the victim, he was, unless he had some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would have otherwise had it. Farmers & Traders Bank v. Kimball Milling Co., 1 S. D. 388 (47 N. W. 402, 73 Am. St. R. 739). The defendant certainly was not a bona fide purchaser from the victim's trustee; for he himself obtained the possession of the money from the victim's trustee by his own trick and fraud. The Code, § 108-106 (2), declares: "Trusts are implied . . Where, from

any fraud, one person obtains the title to property which rightly belongs to another." Immediately following this is § 108-107, which declares: "Whenever the circumstances are such that the person taking the legal estate, either from fraud or otherwise, cannot enjoy the beneficial interest without violating some established principle of equity, the court will declare him a trustee for the person beneficially entitled, if such person shall not have waived his right by subsequent ratification or long acquiescence." Thus our Code expressly recognizes a trust which arises ex maleficio and a trustee ex maleficio. *Brown* v. *Doane,* 86 *Ga.* 32 (12 S. E. 179, 11 L. R. A. 381); *Jenkins* v. *Lane,* 154 *Ga.* 454, 477 (115 S. E. 126). The trust which is imposed upon this kind of a trustee is what is known as a "constructive" or "involuntary" trust; because equity, for the purpose of working out justice in the most efficient manner, creates the trust relationship even though there is no intention of the parties to create a trust. Rogers *v.* Richard, 67 Kan. 706 (74 Pac. 255). Equity regards the person who was guilty of such wrongful and fraudulent conduct as a trustee ex maleficio, and holds him to the duty and liability of a trustee in relation to the subject-matter, in order to prevent him from profiting from his own wrong. Rice *v.* Braden, 243 Pa. 144 (89 Atl. 877). Thus, though he has obtained the money by a trick or fraud and he claims it as his own absolutely, a "constructive," or "involuntary" trust, such as above indicated, holds him to the duties and liabilities of a trustee ex maleficio. *Brown* v. *Doane,* supra. The defendant, by his tricks, misconduct, and fraud, brought about a trust ex maleficio which is a species of "constructive" trust, and this trust was constructively imposed upon the defendant despite the fact that there was no intention of the parties so to do. In relationship to the money obtained by the trick or scheme or fraud, such as is indicated in said section, in order to prevent the defendant from taking advantage of his own wrong, a naked, constructive, ex maleficio trust was imposed by operation of law upon the property thus obtained, even though it was contrary to the trustee's (defendant's) intention and will, and the defendant became a trustee ex maleficio for the property in his hands, obtained by such fraud and trickery known as the "telegram racket." Sanford *v.* Hammer, 115 Ala. 406 (22 So. 117). In other words, he was trustee ex maleficio of a naked ex maleficio trust, which re-

quired no action on his part beyond the turning over or returning of the money to the beneficiary, the victim.   Cerri *v.* Akron People's Telephone Co., 219 Fed. 285, 292.

Thus we think that when this "constructive" trust was imposed upon the defendant in order to prevent him from profiting from his own wrong, the circumstances required him, although there was no intention of the parties to create a trust relationship, to return or reconvey the property (the money) to the victim; and when he did not do so, but converted the money to his own use, he was guilty of larceny after trust.   *Martin* v. *State,* 123 *Ga.* 478 (51 S. E. 334) ; *Fletcher* v. *State,* 28 *Ga. App.* 230 (110 S. E. 748).

■   The Code, § 27-1601, declares that "all exceptions which go merely to the form of an indictment shall be made before trial; and no motion in arrest of judgment shall be sustained for any matter not affecting the real merits of the offense charged in the indictment." In the instant case the defendant did not demur to the indictment, but waited until after verdict before attacking its sufficiency by way of a motion in arrest of judgment; and under the circumstances every presumption and inference is in favor of the verdict.   Hence, the pleading must be construed most strongly in favor of the pleader (the State).   It would be otherwise if it had been excepted to in time by special demurrer in writing. *Lewis* v. *State,* 55 *Ga. App.* 743 (191 S. E. 278).   The attack made on the indictment in the motion in arrest of judgment is that it did not charge all the essential elements of the crime of larceny after trust, and hence charged no crime, in that it did not allege "the character and purpose of the bailment;" in that said indictment "does not charge that the delivery of the property to plaintiff in error and the other defendants was for some specific purpose in which the bailor was to receive the benefit." The indictment was further attacked on the grounds, that it fails "to set out any specific trust delegated to plaintiff in error and other defendants by the owner of said money, nor does said indictment set out what purpose the money was to be used for by plaintiff in error and others for the use and benefit of bailor," and does not allege that "the accused failed to apply the money for the use and benefit of the owner, Andre Wallach." It follows that these grounds are without merit when made by way of a motion in arrest of judgment.

■   The evidence authorized the verdict.

*Judgment affirmed.   Broyles, C. J., and Guerry, J., concur.*