### 43181. WATKINS v. WATKINS.
(344 SE2d 220)

GREGORY, Justice.

Janice Watkins filed for divorce from John David Watkins and for an equitable division of their marital assets. John's mother, Kathleen Watkins, intervened as a defendant seeking to protect any interest she might have in the Watkins' marital home. The trial court granted Kathleen's motion for summary judgment and awarded her an equitable lien on the marital home. We reverse.

Kathleen regularly made gifts and loans to her four children. By 1978, she had made loans to John of approximately $100,000. Many of the loans were evidenced by notes. In July 1978, Kathleen loaned John $9,650 to pay the holder of a note secured by the Watkins' marital residence. John gave his mother a note in exchange. In November 1979, John told his mother he needed another loan of $34,745 to pay the note holder and some other creditors. Without the loan, he said, John's family would be left homeless and he would lose approximately $45,000 in equity in the home. John also told his mother and her attorney he would send another note and a deed to secure debt as security for both notes. Against her attorney's advice, the mother sent her son the money. However, John never sent a note or deed to secure debt to his mother or her attorney.

In 1980, Janice and John Watkins filed a joint petition for Chapter 13 bankruptcy. While the petition was pending, Janice filed for divorce. Soon after, the joint bankruptcy petition was dismissed and John filed an individual petition. John proposed a plan to the bank-

ruptcy trustee, under which the marital home would be sold and his mother would be paid from the proceeds. The trustee agreed the home should be sold, but insisted distribution should be decided in the divorce action. So on August 22, 1984, Kathleen filed a motion to intervene in the divorce action.

Kathleen subsequently filed a motion for summary judgment, which was granted by the trial court. In its order, the court found John had fraudulently obtained the funds with the representation he would provide a deed to secure debt to his mother. The court also found Kathleen had been under the influence of her son when she made the loans and that John had breached a fiduciary duty to his mother. The court imposed an equitable lien of $44,395 on the proceeds of the sale of the Watkins' marital home to repay Kathleen.

1. Janice contends the trial court erred in imposing an equitable lien on the marital home. An implied trust of that nature cannot be established on the basis of a loan, she argues. She further contends no fraud existed since John did not misrepresent past or existing fact, but rather merely failed to fulfill a promise of a future action. Finally, she argues the oral transaction created an interest in land and is barred by the Statute of Frauds.

This court in *Middlebooks v. Lonas*, 246 Ga. 720 (2) (272 SE2d 687) (1980), held that a constructive trust or equitable lien can be imposed to obtain repayment of a loan when the loan was fraudulently procured and no adequate remedy is available at law. The court relied on OCGA § 53-12-26 (2), which provides a trust will be implied "[w]here, from any fraud, one person obtains the title to property which rightly belongs to another." The court further held a promise made without a present intent to perform is a misrepresentation of material fact and is sufficient to support a claim of fraud. *Middlebrooks*, supra at 721. See also Restatement of Torts Second, § 530 (1), p. 64 (1977).

Nor is an action attempting to establish an implied trust barred by the Statute of Frauds. See *Bennett v. Bennett*, 212 Ga. 128, 129 (91 SE2d 29) (1956). "The statute of frauds is inoperative as a protection and support of fraud, and equity will declare a constructive trust in respect of property acquired by fraudulent oral promises of a vendee, which he intends at the time of making to violate." *Mays v. Perry*, 196 Ga. 729, 734 (27 SE2d 698) (1943).

It is undisputed that John promised to send his mother and her attorney a note and deed to secure debt in exchange for the $44,395 in loans. On the question of fraud, the key issue is whether John made the promise without a present intent to perform. In an affidavit, John said that at the time he told his mother's attorney he would forward the documents, he intended to sell the property immediately and pay his mother out of the proceeds. Thus, he said, he saw no

reason to provide the note or deed to secure debt. In a deposition, however, John said he received copies of the documents from his mother and held them for some time intending to execute and return them to her attorney. He said he discarded the unexecuted documents later when he thought a buyer had been found for the house.

The test for grant or denial of summary judgment is whether there remains after consideration of the pleadings, depositions, answers to the interrogatories, admissions on files and affidavits any genuine issue of material fact. OCGA § 9-11-56 (c). The trial court held John fraudulently obtained funds from his mother through misrepresentation. The only fact as to which there may be a material issue to preclude summary judgment is the intention of John at the time he borrowed the $44,395. Did he intend to execute and deliver the note and deed to secure debt and simply fail to carry out his intention or did he not intend to execute and deliver the note and deed to secure debt? He has given contradictory testimony on this issue without explanation for the contradiction. See *Prophecy Corp. v. Rossignol*, 256 Ga. 27 (343 SE2d 680) (1986). Therefore, his testimony must be construed against his interest. It is against his interest to deny summary judgment. Thus, we construe his testimony to reach that result and accept for this purpose the position given by him on deposition that he intended from the outset to execute and deliver the note and deed to secure debt rather than his testimony given by affidavit which denies the intent. This results in the presence of an issue of fact precluding summary judgment.

2. Janice also claims the trial court erred in holding she is estopped to deny the interest of Kathleen in the house or to assert a claim for proceeds from the sale. The trial court found that Janice benefited from the loan because it protected the marital home from foreclosure.

OCGA § 24-4-27 provides: "In order for an equitable estoppel to arise, there must be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." Even though Janice may have benefited from the loan to her husband, it was not shown Janice was in any way directly involved in the discussions and negotiations with Kathleen or her attorney that procured the loan to her husband. It appears from Kathleen's affidavit and deposition that she relied solely on her son's representations and conduct in making the loan. Therefore, the trial court erred in finding that Janice was equitably estopped from pursuing a claim to the residence.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 10, 1986.

*Alembik, Fine & Callner, Bruce W. Callner,* for appellant.

*Bogart, Moss & Clifford, J. Stephen Clifford, Meals, Kirwan, Goger, Winter & Parks, John J. Goger, Michelle J. Bardavid,* for appellee.