**In the Matter of SMS INVESTMENT ASSOCIATES, INC., Debtor.**

**SMS INVESTMENT ASSOCIATES, INC., Plaintiff,**

v.

**PEACHTREE CITY, Defendant.**

**Bankruptcy No. N90–32688–WHD.**
**Adv. No. 92–1089N.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

April 28, 1995.

---

John C. Pennington, Wilson, Strickland & Benson, P.C., Atlanta, GA, for plaintiff/debtor.

James H. Webb, Eric K. Maxwell, Webb & Lindsey, Peachtree City, GA, for defendant.

## *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Complaint of the debtor SMS Investment Associates, Inc. (hereinafter "Debtor") filed on December 7, 1992 against the City of Peachtree City (hereinafter "Peachtree City" or "City"). By commencing this proceeding, the Debtor requests this Court to order Peachtree City to turn over property of the estate. As such, the matters involved herein constitute a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. § 157(b)(2)(E). A trial was conducted on December 8, 1994, after which time the Court took these matters under advisement and requested additional briefing, the last of which was received March 13, 1995. After careful consideration of all the evidence, testimony, and arguments presented in this proceeding, the Court will make its decision based upon the reasons set forth below.

## FACTUAL BACKGROUND

Peachtree City, located in Fayette County, Georgia, is a planned community that strictly regulates the development of land within its borders. One of the many regulations that pertains to the development of residential property is that a developer must dedicate a certain portion of land to be used exclusively for recreational purposes. When such land is unavailable for one reason or another, the developer may pay a predetermined sum of money to the city in lieu of dedicating the land.[1] The Debtor in this proceeding was the developer of the Smokerise subdivision in Peachtree City, and as such, was subject to this regulation.

Several years of negotiations occurred between the parties as they tried to decide what property in the subdivision should be set aside for recreational use. During this time, the Debtor was represented by Terry M. Foster who maintained discussions with James B. Williams, the Director of Development for Peachtree City. The Debtor recommended to Peachtree City several different sites, but for various reasons the City found them to be unacceptable. Finally, the parties agreed upon a tract of land in the subdivision, comprised of three adjoining lots totalling 3.718 acres in size, which would satisfy the Debtor's obligation to provide the City with recreational land.

On April 6, 1990, the Debtor dedicated this tract of land to Peachtree City by warranty deed. Several months later, however, the Debtor approached the City and expressed its intent to exercise an alleged right to repurchase the property in order to build houses on them. By that time, the Debtor had acquired the funds to pay the necessary sum of money in lieu of dedicating land for recreational use. Peachtree City responded that it was unable to comply with the Debtor's request.

After the Debtor filed for Chapter 11 relief in this Court, it commenced this adversary proceeding to compel Peachtree City to reconvey the property in exchange for the money. Peachtree City defends this action by relying on the Statute of Frauds, since the warranty deed conveying the property to Peachtree City makes no mention of a duty to reconvey the property upon the happening of some future event. In response, the Debtor argues that the City made such a promise to induce it to convey the property, but had no present intent to perform. Such a situation could give rise to an implied trust not governed by the Statute of Frauds. In the alternative, if no enforceable agreement is found to exist, the Debtor contends that Peachtree City received a benefit from the promise and that it is required to reconvey the property under a *quantum meruit* theory. The Court will address all these issues in the following discussion.

## DISCUSSION

■ As noted above, this proceeding involves the Debtor's alleged right to receive land currently titled to Peachtree City. Thus, the Court must determine the rights and interests the parties hereto have in real property. As the Supreme Court has noted:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (citation omitted); *see, e.g., In re McBarnette*, 173 B.R. 248, 249 (Bankr.N.D.Ga.1994) (Drake, J.) (finding existence of purchase money resulting trust under Georgia law); *Empire Fin. Servs., Inc. v. Gingold (In re Real Estate West Ventures, L.P.)*, 170 B.R. 736, 740 (Bankr.N.D.Ga.1993) (Drake, J.) (applying Georgia law to determine rights in postpetition rents). Since the State of Georgia is the

1. When this option is chosen, the developer must pay $500.00 multiplied by the number of dwelling units proposed for the development. The Debtor would pay approximately $55,000 under this option.

location of the property in question and the place of contracting, the Court will look to Georgia law to determine the issues placed before it in this adversary proceeding.

### A. Statute of Frauds

■ The crux of Peachtree City's defense in this adversary proceeding is that the Debtor's claim is barred by the Statute of Frauds. Georgia's version of the Statute of Frauds is, in pertinent part, as follows:

> To make the following obligations binding on the promisor, the promise *must be in writing and signed by the party to be charged therewith* or some person lawfully authorized by him:
>
> .    .    .    .    .
>
> (4) Any contract for sale of lands, or any interest in, or concerning lands ...

O.C.G.A. § 13–5–30(4) (emphasis added). When it commenced this adversary proceeding, the Debtor claimed that there existed an agreement that Peachtree City would reconvey the property in question upon the happening of a particular event. Under Georgia law, as set forth above, such an agreement would have to be in writing and signed by Peachtree City in order to be binding. Nevertheless, the warranty deed executed between the parties on April 6, 1990, makes no mention of any agreement to reconvey the subject property. In addition, the warranty deed appears complete on its face, making it unnecessary for the Court to look to other evidence to clarify any ambiguities. As such, the Statute of Frauds itself prevents the Debtor from asserting that there existed at the time of the conveyance an oral agreement to reconvey the property.

While the Debtor has been unable to find any written language within the warranty deed to support its argument of the existence of an agreement to reconvey the property, it does point to a letter dated March 28, 1990, from Foster to Williams. This letter was sent prior to the execution of the warranty deed and states in part as follows:

> We will show the dedication for recreation land on lots VI–1, VI–2 and VI–3. We wish to leave these in the size of the three lots so as to replat in the future as three individual lots. We will do this by paying the City the required $500 per lot for all deeded lots in Phases I through VI. Upon payment of this money, *the City would deed us this area back* and we would record a plat showing these as individual building lots.

*See* Plaintiff's Exhibit #1 (admitted at trial Dec. 8, 1994) (emphasis added). The Foster letter, however, is not a writing sufficient to meet the requirements of the Statute of Frauds. As the Georgia statute makes clear, the writing must be "signed by the party to be charged therewith or some person lawfully authorized by him." O.C.G.A. § 13–5–30. Neither Peachtree City nor any person lawfully authorized by it signed the letter. As such, it does not establish an obligation on the part of Peachtree City to reconvey the property in question.

■ Nevertheless, as noted by the Court when it ruled on Peachtree City's Motion for Summary Judgment in 1993, the Statute of Frauds does not always provide a complete and absolute defense. Certain exceptions to its application exists. For example, Georgia law provides that the Statute of Frauds does not bar an action attempting to establish an implied or constructive trust. *Watkins v. Watkins,* 256 Ga. 58, 59, 344 S.E.2d 220 (1986); *Williams v. Whitfield,* 242 Ga. 639, 640, 250 S.E.2d 486 (1978); *United States v. 1419 Mount Alto Rd.,* 830 F.Supp. 1476, 1481 (N.D.Ga.1993). With regard to such an action, one court has stated as follows:

> The essential ingredient which gives rise to a constructive trust is fraud. And where, as here, the question involves a deed to land, and the legal title to the land is sought to be recovered by the enforcement of an oral agreement to reconvey it, *fraud must have existed contemporaneously with the acquisition of the land* by the one who is sought to be charged as trustee ex maleficio.

*Bennett v. Bennett,* 212 Ga. 128, 129, 91 S.E.2d 29 (1956) (emphasis added) (citing to *Brown v. Doane,* 86 Ga. 32, 38, 12 S.E. 179 (1890)).

■ The success or failure of the Debtor's case is whether it can establish the existence of an implied trust to prevent the application

of the Statute of Frauds. The Debtor contends that the parties reached an oral agreement whereby Peachtree City agreed to reconvey the subject property once the Debtor had sufficient funds to provide cash in lieu of land to satisfy the City's recreation property ordinance. The Debtor contends further that because of this oral promise, it was fraudulently induced to execute the warranty deed conveying the property, as Peachtree City had no intention of reconveying the land. To prevail on its implied trust theory, however, the Debtor must show that (1) an agreement to reconvey was actually reached; and (2) Peachtree City "made the promise without a *present intent* to perform." *Watkins,* 256 Ga. at 59, 344 S.E.2d 220 (emphasis added). After carefully considering the evidence and testimony admitted at trial, the Court finds that the Debtor fails on both points.

■ First, the Court finds that there existed no actual agreement between Peachtree City and the Debtor to reconvey the property. There is no dispute that the parties discussed the possibility of making cash payments in lieu of dedicating property. *See* Tr. at 37, 59 (Dec. 8, 1994). In fact both sides felt that the cash would be preferable over the land, since the property in question was not an ideal recreation site. *See* Tr. at 13, 20, 42, 59 (Dec. 8, 1994). Unfortunately, the Debtor was not in a financial position to make the cash payments at the necessary time, so it dedicated the property instead. *See* Tr. at 41–42, 60 (Dec. 8, 1994). Prior to the actual conveyance, the parties did discuss the possibility of Peachtree City reconveying the property at a later date once the Debtor had sufficient cash on hand. *See* Tr. at 38, 49, 59 (Dec. 8, 1994). In fact, Jim Williams, who acted on behalf of Peachtree City during the time in question, said that he would recommend to the city council that it reconvey the property if and when the Debtor offered the cash payment. *See* Tr. at 49, 67–68 (Dec. 8, 1994).

The fact, however, that the parties discussed the possibility of reconveying the property does not prove that an agreement actually existed. On this point, the Court finds persuasive the testimony of Williams, which is in part as follows:

Q  And so we are clear about this, sir, in March and April of the year we've been talking about, you were under the impression that if you recommended to the City Council that Mr. Foster's client could repurchase the property, and if the City Council followed your recommendation, that that was legally permissible. Is that correct?

A  That certainly was my understanding at the time, yes.

Q  However, it's your understanding that, in your own mind, you never promised Mr. Foster that he had the right to repurchase the property?

A  I would not have done that.

*See* Tr. at 67–68 (Dec. 8, 1994). On further questioning from the Court, Williams testified as follows:

THE COURT: Mr. Williams, about this paragraph four again in Plaintiff's Exhibit 1, in which Mr. Foster stated that upon payment of this money, the City will deed us this area back; you saw no need to correct that statement in that you would only recommend to the council that this take place?

THE WITNESS: My feeling at the time was that our understanding was—

THE COURT: That that was to transpire?

THE WITNESS: *That if he got the money, he would request that, and that I would recommend it,* and I had no reason to believe that there wouldn't have been a reasonable chance for him to get his money [sic] back, under the circumstances.

THE COURT: But it's your testimony that at all times he understood that you could only recommend. Is that right?

THE WITNESS: I have no question about that, whatsoever.

*See* Tr. at 71 (Dec. 8, 1994) (emphasis added).

Based upon Williams' testimony, the Court finds that, at most, there existed an agreement whereby Williams would *recommend* to the City that it reconvey the property to the Debtor. Nevertheless, a mere promise to recommend cannot be construed as an actual

promise to reconvey the property. The Court finds it plausible that the Debtor believed such an agreement to reconvey the property existed. The testimony provided by Williams, however, makes it clear that Peachtree City was not of the same belief. Since no meeting of the minds occurred, no legally binding agreement could have come about.

■ Even assuming Williams' promise to recommend that the City reconvey the property at a later date could be construed as an actual promise to transfer the property, the Debtor still fails to establish the existence of an implied trust. As noted above, the promise must be coupled with a present intent not to perform. At the time Williams made the promise to the Debtor, he believed the city council would approve the transfer without any problem. As he later found out, however, a mere reconveyance in exchange for the cash was no simple matter. Once again, the testimony of Williams at trial is helpful:

Q What's your understanding, and I know there's a law on this and I don't want you to belabor it, but what's your understanding of what the City has to do if they want to dispose of property?

A I think it has to be appraised to determine the fair value and then has to be disposed of reasonably in accordance with that appraised value. It couldn't be disposed of at a fire sale just to meet some—

THE COURT: *Did you know about these procedures when you were talking to Mr. Foster?*

THE WITNESS: *No, sir, I didn't.* Another situation arose in the meantime where it came up and it was made aware to me, and I really didn't give it a thought relative to this situation until Mr. Foster requested the lots back.

THE COURT: How long had you been City Planner when you had your discussions with Mr. Foster?

THE WITNESS: I would guess three years, three to four years.

THE COURT: *This situation had never arisen in that period of time, that you had*

*to go through this procedure in order to dispose of land?*

THE WITNESS: *No, sir. We had never disposed of any land prior to that, to my knowledge.*

*See* Tr. at 61–62 (Dec. 8, 1994) (emphasis added).

As this evidence shows, Williams became aware of the legal and procedural limitations on Peachtree City's ability to reconvey the property some time *after* he made any agreement with the Debtor. Nevertheless, his misunderstanding of the law at the time of the promise does not correlate to a present intent not to perform. The Court finds that at the time in question, Williams, acting on behalf of Peachtree City, had every intention of doing what he could to see the property reconveyed to the Debtor. Only upon receiving information *at a later date* did Williams realize that such a reconveyance would not be possible. *See* Tr. at 50 (Dec. 8, 1994). In view of these facts and circumstances, the Court concludes that an implied trust did not arise in this case. Therefore, the Statute of Frauds prevents the Debtor from arguing that Peachtree City agreed to reconvey the property in question once the Debtor had sufficient funds to satisfy the City's recreation land requirement.

### B.  Quantum Meruit Theory

■ In its posttrial brief, the Debtor raises an additional argument under the theory of *quantum meruit* that it is entitled to require Peachtree City to reconvey the subject property.[2] Specifically, the Debtor contends Williams acted in his capacity as an agent for Peachtree City, and in so doing, he made a promise that the City would reconvey the property at a later date. Acting upon this promise, the Debtor executed the warranty deed resulting in a benefit to Peachtree City. The Debtor now contends that the concept of *quantum meruit* prevents the City from receiving this benefit without giving effect to the promise to reconvey the land.

---

2.  In view of the ultimate decision reached here, the Court will not consider the propriety of the Debtor's raising this argument at such a late date in this proceeding.

Georgia law recognizes the legal theory of *quantum meruit. See, e.g.,* O.C.G.A. § 9–2–7.[3] Nevertheless, this concept is inapplicable to the facts of this case. As the Court found above, no promise was made by Peachtree City to reconvey the property once the Debtor had sufficient funds to pay cash in lieu of dedicating the recreation property. At most, Williams promised that he would recommend to the city council that it reconvey the property when the Debtor offered the money. This promise, however, is insufficient to act as the basis of a *quantum meruit* action.

Assuming that Williams promised the City would reconvey the property, and assuming further that such a promise could bind Peachtree City, a *quantum meruit* theory still would not succeed for two reasons. First, for *quantum meruit* to apply, one party must render services or transfer property to another without receiving anything in return. In the case *sub judice,* the Debtor received a benefit when it transferred the property to Peachtree City, *i.e.,* it received the necessary permission from the City to proceed with the development of the Smokerise subdivision. The Debtor knew from the outset that Peachtree City's recreation land requirement was a price for developing residential property within the city limits. Having satisfied the requirement, it cannot now come before the Court and claim the City was unjustly enriched. If the Court accepts the Debtor's argument here, then every developer who dedicated land for recreation use would have a *quantum meruit* claim against Peachtree City.

■ The second reason why the Debtor's argument fails can be found in one of the cases to which it cites in its brief. Specifically, the Debtor cites to *City of Gainesville v. Edwards,* 112 Ga.App. 672, 145 S.E.2d 715 (1965), for the proposition that a municipality is not entitled to keep the benefit it receives from an otherwise unenforceable contract. As *City of Gainesville* makes clear, however,

this proposition does not apply where the municipality had no authority to enter into such a contract in the first instance:

> Where, because of a constitutional or statutory inhibition or because the power to enter into a certain type of contract is not included in that granted to a governmental body, an attempt by such body to make the contract is not only ineffective at the time but it cannot subsequently be ratified by retention and use of the benefits so procured. *Persons dealing with governmental bodies are presumed to know the extent of the latters' authority, and "an implied contract will not arise where an express contract is unauthorized by law."*

*City of Gainesville,* 112 Ga.App. at 674, 145 S.E.2d 715 (emphasis added) (quoting *Decatur County v. Roberts,* 159 Ga. 528, 126 S.E. 460 (1925)). The Georgia Court of Appeals reiterated this point in a recent decision and noted the following:

> Appellants' reliance on *Gainesville v. Edwards,* 112 Ga.App. 672 (145 SE2d 715) (1965), is also misplaced; for in that case, in which we allowed a quasi-contract recovery for services rendered a city in the absence of a binding contract, the alleged agreement was one the city was authorized to make but simply had not made with the requisite formalities. *In the instant case, the City purportedly made agreements it was unauthorized to make,* and the monies loaned pursuant to the purported agreements were not used to discharge legally incurred liabilities for current expenses. *Accordingly, a quasi-contract recovery for appellants is not available.*

*Circle H Dev., Inc. v. City of Woodstock,* 206 Ga.App. 473, 477, 425 S.E.2d 891 (1992) (emphasis added).

The facts of this proceeding are similar to those in *Circle H.* Here the Debtor claims Peachtree City purportedly made an agreement to reconvey the subject property at a

---

**3.** This statute states as follows:

> Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. However, this presumption does not usually arise in cases between very near relatives.

O.C.G.A. § 9–2–7. The Court notes that this statute and the case law encompass the similar concepts of *quantum meruit,* implied contract, quasi-contract, and unjust enrichment.

later date in exchange for the recreation fee, but Peachtree City had no authority to make such an agreement. A municipality simply cannot reconvey property for a previously determined sum of money. Instead, the city council must first approve the sale, then publish notice of the sale and accept bids, and finally, the city must sell the property to the highest bidder. *See* O.C.G.A. § 36–37–6(a). In dealing with the City, the Debtor is presumed to know of these limitations upon its authority to sell land. *See City of Gainesville*, 112 Ga.App. at 674, 145 S.E.2d 715. The agreement which the Debtor purports Peachtree City made contravenes its statutory authority to dispose of property. As such, it cannot serve as the basis for a *quantum meruit* claim.

## CONCLUSION

In conclusion, the Court finds that Peachtree City did not make a promise to the Debtor to reconvey the subject property once the Debtor had sufficient funds to pay the recreation fee requirement. Even assuming such a promise was made, the Debtor has failed to show that it was made with the present intent not to perform. Since no written evidence exists in the warranty deed of this purported agreement, the Debtor's argument is barred by the Statute of Frauds. Furthermore, the Debtor has no claim under the theory of *quantum · meruit* to require Peachtree City to reconvey the property. Accordingly, the relief the Debtor seeks through its Complaint for turnover of property is hereby **DENIED**. The Court shall enter a separate judgment in favor of the defendant Peachtree City.

**IT IS SO ORDERED.**

## *JUDGMENT*

Judgement is hereby entered for the Defendant against the Plaintiff in the above-styled adversary proceeding in accordance with the Order of the Court entered the 28th day of April, 1995.