338

## 22139. SOUTHERN LAND, TIMBER & PULP CORPORATION v. EUNICE.

Submitted September 9, 1963—Decided October 15, 1963.

*Sanders, Mottola & Hanger, Walker P. Johnson, Jr.*, for plaintiff in error.

*Robert Paul Leiter, Beulah Leiter, Leiter & Leiter, Marvin O'Neal, Jr.*, contra.

Grice, Justice. For review here are rulings sustaining the petition of a salesman against a corporation for commissions due from sale of its stock. The defendant, Southern Land, Timber & Pulp Corporation, assigns as error the overruling of demurrers, general and special, and the denial of motions to dismiss and to strike directed to the petition which Clifford Henry Eunice had filed in the Superior Court of Meriwether County.

The petition as originally filed was twice amended and was reconstituted into two counts.

■ We deal first with count 1. Its allegations are substantially the following. The plaintiff was employed on April 20, 1959, by the defendant corporation to sell its stock to Georgia residents under an agreement whereby he would receive a 10% commission on all cash and time sales made by him. On time sales his commissions were protected by the purchasers' 15% down payment, so he earned the 10% commission at the time such sales were made and accepted by the defendant, regardless of final disposition.

He continued to sell until March 13, 1962. During such employment he sold approximately $200,000 worth of the defendant's stock to Georgia residents, both for cash and on time, on which he was entitled to receive the 10% commission. He turned

the original orders and records on these sales over to the defendant and thus does not have information on or copies of all. He has copies on approximately three-fourths of such sales.

He received commission checks on Saturdays for sales made through the preceding Wednesdays, but these were always for less than his full commissions earned during that period. He was told that these shortages were being applied to his purchase, pursuant to previous agreement, of 1,000 shares of the defendant's stock. He has received no stock certificates, although he has made demand.

He has been paid $9,714.20 in commissions, leaving a balance due him of approximately $10,000. He has made numerous requests and demands on the defendant for the balance and for an accounting of money due him, but the defendant refuses.

By amendment of August 17, 1962, the petition made the additional allegations which follow. The defendant is in the process of disposing of and conveying its net assets in a joint venture agreement with a named concern. A new company is to be formed so that the defendant will no longer have corporate existence. It has set a meeting for August 25, 1962, for the purpose of obtaining approval of such agreement and thereby threatens to dispose of its assets and property. The plaintiff will suffer irreparable loss unless the defendant is restrained from proceeding further with such agreement and disposing of or conveying its assets. This threatened disposition will render it insolvent, and irreparable damage will result to plaintiff unless an injunction is entered against such disposal. He has no adequate remedy at law.

The prayers of this count include judgment for the plaintiff, equitable accounting of the books and records of the defendant to determine the amount of commissions due him, appointment of an auditor to make such accounting and judgment for the amount shown, temporary and permanent injunction against the defendant's negotiating, consummating or proceeding further with the August 25, 1962, meeting, the joint venture agreement, and the disposing of or conveying any of its assets.

The foregoing count 1, as we appraise it, alleges a cause of action. It effectively pleads a contract whereby the defendant

was to pay the plaintiff 10% commission on all stock sales he made to Georgia residents, his sale of at least $200,000 of its stock to such residents, payment to him of only a portion of the commissions due thereon, the approximate balance due him, his demand for and the defendant's failure to account for the balance and his need for injunctive relief. The prayers are consistent with and are supported by the allegations of fact.

■ We now give attention to count 2. Its material allegations may be summarized as follows. The defendant Georgia corporation, on April 20, 1959, employed the plaintiff to sell its stock to residents of this State, under an oral agreement by which he was to receive 10% commission on all such sales made by him.

This agreement provided that the defendant would pay the plaintiff the 10% commission whether the sales were cash or time, and regardless of their final disposition. On cash sales the full 10% commission was to be paid at the time orders were received and credited by the defendant. On time sales the 10% commission was also to be paid and credited to his account at the time orders were thus received and accepted, 65% of the commissions to be paid outright and 35% to be credited to him in a reserve account to be held in trust for him by the defendant, for his use and benefit.

In connection with his employment, the plaintiff was required to purchase 1,000 shares of the defendant's stock at $5.04 per share, as shown by the attached copy of his stock subscription of May 5, 1959, and ledger sheet. This stock was to be paid for by the commissions retained by the defendant. No coupon book was given the plaintiff with his stock order. It was further agreed that his full commissions on the time sales were earned and protected under the sales cost clause appearing in the time sales subscription forms used. The ledger sheets showing credits to his reserve account are in the control of the defendant. In holding these commissions in reserve the defendant is acting in a fiduciary capacity, such reserve being held in trust for the plaintiff.

The plaintiff continued to sell stock for the defendant on the foregoing terms and conditions until March 13, 1962. All of his original records pertaining to such transactions were turned over to the defendant and are in its possession and control.

During his employment the plaintiff sold approximately $200,-000 of defendant's stock to Georgia residents for cash and on time, on which he was entitled to receive the full 10% commission. He has copies of the records on only approximately $150,-000 of such sales. The defendant has paid him about $9,500 on account of his commissions on both cash and time sales, but has not paid him all the commissions due him. In addition the defendant is holding earned commissions in reserve, in trust for his use and benefit. He has demanded an accounting and payment, but to no avail. He believes that the defendant has in trust for his benefit approximately $10,000 due him as earned commissions for which it fails to account.

He made inquiry from a named agent of the defendant and was informed that the balance of his earned commissions was being placed in reserve for him by the defendant, being held in trust for his use and benefit and being applied toward purchase of the 1,000 shares of stock for which he subscribed. The defendant refuses to account, and plaintiff has no means of ascertaining the exact amount due him since all original records as to his sales and reserve account are in the defendant's possession. He has received no shares of stock.

Plaintiff relied on the defendant to pay and to account to him for the full amount of all commissions earned by him, the greater portion of which were on time sales.

This count also made the following allegations of matters transpiring since the filing of the suit. Early in August 1962, the defendant sent to its stockholders an open letter, a prospectus, a form of reaffirmation statement, a notice of a stockholders' special meeting, and a proxy, all of which the plaintiff, as a stockholder, received. These documents related to a contemplated joint venture arrangement with another concern. The notice of the special meeting stated that it was being called for the purpose of acting on the proposed arrangement whereby the defendant corporation would sell substantially all of its assets to a new company to be formed and then liquidate, dissolve and distribute its assets (stock in the new corporation) to its stockholders. These documents also provided the machinery by which the stockholders could give assent to these proposals. The

prospectus mentioned the possibility that certain purchasers of stock might be entitled to refunds of amounts paid for it, and the reaffirmation statement gave them the opportunity to reaffirm the purchase instead. The plaintiff did not execute such reaffirmation statement.

About this time the plaintiff also received a letter from the defendant's president in which he acknowledged the existence of the plaintiff's reserve account and stated that time would be given him to complete payment on the stock charged to his reserve account.

On August 20, 1962, the trial court entered an order for the appointment of an auditor, for an accounting, and for the defendant to post bond of $12,000 to indemnify the plaintiff from loss in this matter. Pursuant to that order, the defendant posted such bond, an auditor was appointed, and an audit, reflecting the existence of a reserve account in the defendant's possession but not showing the total amount in reserve for the plaintiff, was prepared and filed with the court. The complete records are in the defendant's possession and the plaintiff is entitled to have a full accounting as to the total amount due him and held in trust for him by the defendant.

Plaintiff has no adequate remedy at law, and unless the defendant is enjoined he will suffer irreparable loss by the defendant's threatened disposition of its property and assets and termination of its corporate existence, as he fears that the defendant will dispose of, dissipate or intermingle his reserve account held by it in trust for him. He is without any remedy except in equity and is entitled to an accounting as to the reserve commissions held by the defendant for his benefit.

The prayers were for judgment against the defendant, an accounting to determine the total of all reserve commissions and money due him, continuance of the bond until final disposition of the case, and general relief.

This count we also deem to set forth a cause of action. It alleges in substance what count 1 does, with some elaboration.

Also, this count seeks to show that the sums allegedly due the plaintiff are held in trust for him by the defendant. However, he fails to show a trust. The agreement whereby the defendant

was to hold the commissions in a reserve account for the use and benefit of the plaintiff was oral; hence there is no express trust. *Code* § 108-105. Neither is there an implied trust, either resulting or constructive. There is no allegation that the plaintiff's money was invested in property the legal title to which was taken in the name of the defendant. *Code* § 108-106. Nor is there any allegation of fraud on the part of the defendant in obtaining or withholding the sums claimed here. *Code* § 108-106.

A different result is not required by the contention that the amendment creating count 2 adds a new cause of action. This objection, even if valid, is not raised by mere general demurrer to the petition as amended. It must be specifically pointed out. *Aycock v. Williams*, 185 Ga. 585 (1) (196 SE 54).

■ Since both counts 1 and 2 allege a cause of action, it follows that the defendant's general demurrers of September 1, 1962, and April 17, 1963, and its oral motion to dismiss the petition of May 6, 1963, each on the ground that the petition fails to allege a cause of action, were properly overruled and denied.

■ We turn now to the error assigned upon the overruling of paragraph 2 of the defendant's special demurrer of September 1, 1962. This ground is directed to paragraph 3 of the plaintiff's petition, as amended August 17, 1962, all of which by amendment of February 12, 1963, became count 1 of the petition as finally amended.

The allegation under attack is: "That on all stock sold on the time payment plan his ten per cent (10%) sales commissions were protected by the initial fifteen per cent (15%) cash down payment required from the subscriber in the event of default so that his ten per cent (10%) stock sales commissions were earned on all sales made by him at the time the orders were received, regardless of their final disposition." The ground of demurrer is: "That said allegations are argumentative, prejudicial and a conclusion of the pleader."

We conclude that this ground of demurrer was meritorious and should have been sustained. In neither the paragraph under attack nor any other in that count is there any basis for the statement that the commissions on time sales were "protected" by

the subscriber's down payment, so that such commissions were earned when orders were received. It is not alleged that such was a part of the agreement which forms the basis of the cause of action. This allegation is a mere conclusion, unsupported by any allegation of fact. That it was pleaded properly in count 2 cannot aid the deficiency in this count 1, since in the absence of adopting language the two counts stand independently.

The contention that this demurrer should be overruled because the defendant failed to renew it after the February 12, 1963, amendment to the petition is not meritorious. As indicated in Division 2 of this opinion, this amendment did not materially change the cause of action and therefore renewal was not necessary. *Pritchett v. Ellis*, 201 Ga. 809 (41 SE2d 402).

■ In conclusion, we consider the denial of the defendant's oral motion to strike every allegation of the petition as finally amended which refers to any fact or act occurring after August 2, 1962, particularly paragraphs 8 through 12 of the August 17, 1962, amendment and paragraphs 11, 12, 14, 15, 16, 17, 18, 19, 21, 23, 24, 25, 26 and 27 of the February 12, 1963, amendment.

"This being an equity case, facts transpiring after the filing of the petition, if germane to the original cause of action, may be alleged by amendment." *Barrentine v. Griner*, 205 Ga. 830 (5) (55 SE2d 536). That ruling applies here. Also, see *Byrd v. Prudential Ins. Co.*, 185 Ga. 310 (2d) (195 SE 403) (one Justice dissenting).

The trial court properly denied this motion.

The rulings considered in this review are incorporated in two judgments. The judgment of May 11, 1963, is affirmed, except for the portion overruling paragraph 2 of the defendant's special demurrer which is reversed. The judgment of May 20, 1963, is affirmed.

*Judgment affirmed in part; reversed in part. All the Justices concur.*