MITSUBISHI INTERNATIONAL CORPORATION, Plaintiff–Counterclaim–Defendant–Appellant,

v.

CARDINAL TEXTILE SALES, INC.; United General Marketing, Inc., Classic Sales, Inc., Charles W. Jones and Robert E. Lee, Defendants–Crossclaim–Plaintiffs–Appellees,

General Sales & Leasing Co., Defendant–Counterclaim–Plaintiff–Crossclaim–Plaintiff–Appellee,

Fibertex Textile Supplies, Inc., Defendant–Crossclaim–Defendant–Crossclaim–Plaintiff,

Purvis–Sikkelee International, Ltd. and Skein Dyers of America, Inc., Defendants–Crossclaim–Defendants–Appellees,

Raymond B. Lippincott, III, et al., Defendants,

William J. Purvis, William L. Sikkelee and Consolidated Trading Co., Defendants–Appellees,

Joseph Lee Smith, et al., Defendants–Crossclaim–Defendants,

Hershel Nunley, et al., Defendants–Crossclaim–Plaintiffs,

United States of America, et al., Movants.

MITSUBISHI INTERNATIONAL CORPORATION, Plaintiff–Counterclaim–Defendant–Appellant,

v.

CARDINAL TEXTILE SALES, INC., et al., Defendants–Crossclaim–Plaintiffs,

General Sales & Leasing Co., Defendant–Counterclaim–Plaintiff–Crossclaim–Plaintiff,

Fibertex Textile Supplies, Inc., Defendant–Crossclaim–Defendant–Crossclaim–Plaintiff,

Purvis–Sikkelee International, Ltd. and Skein Dyers of America, Inc., Defendants–Crossclaim–Defendants–Appellees,

Raymond B. Lippincott, et al., Defendants,

William J. Purvis and William L. Sikkelee, Defendants–Appellees,

Hershel Nunley, et al., Defendants–Crossclaim–Plaintiff,

United States of America, et al., Movants.

Nos. 91–8775, 91–8900 and 92–8192.

United States Court of Appeals, Eleventh Circuit.

Feb. 9, 1994.

---

6. For a discussion of 18 U.S.C. § 3147, *see United States v. Di Pasquale,* 864 F.2d 271, 279–81 (3rd Cir.1988).

Dorothy Y. Kirkley, Jones, Day, Reavis & Pogue, James A. Orr, Ronald T. Coleman, Jr., Paul, Hastings, Janofsky & Walker, At-

lanta, GA, for appellant in Nos. 91–8775, 91–8900.

Kenneth A. Shapiro, Nancy F. Lawler, Atlman, Kritzer & Levick, Thomas R. Todd, Jr., Gregory R. Crochet, Michael K. Wolensky, Kutak, Rock & Campbell, Kevin L. Ward, David L. Turner, Schulten & Ward, Steven H. Sadow, Steven H. Sadow, P.C., Atlanta, GA, Bruce Alan Kling, Kinney, Kemp, Pickell, Sponcler & Joiner Dalton, GA, F. Gregory Melton, Tracey Scalfano Witt, Kinney, Kemp, Pickell, Sponcler & Joiner, Dalton, GA, William Scott Schulten, Schulten & Ward, Atlanta, GA, for appellees in No. 91–8775.

Kevin L. Ward, William Scott Schulten, Schulten & Ward, Atlanta, GA, Bruce Alan Kling, F. Gregory Melton, Kinney, Kemp, Pickell, Sponcler & Joiner, Dalton, GA, Steven H. Sadow, William Scott Schulten, Schulten & Ward, Atlanta, GA, for appellees in No. 91–8900.

Dorothy Y. Kirkley, Jones, Day, Reavis & Pogue, James A. Orr, William J. Holley, II, Ronald T. Coleman, Jr., Paul, Hastings, Janofsky & Walker, Atlanta, GA, for appellant in No. 92–8192.

F. Gregory Melton, Bruce Alan Kling, Kinney, Kemp, Pickell, Sponcler & Joiner, Dalton, GA, William Scott Schulten, Schulten & Ward, Atlanta, GA, for appellees in No. 92–8192.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and JOHNSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

This action for money damages is presently pending in the district court.[1] In order to ensure that the plaintiff will be able to satisfy any money judgment that it might ultimately obtain in this litigation, the district court, on the plaintiff's application for preliminary in-

---

1. The plaintiff has invoked the court's federal question jurisdiction, 28 U.S.C. § 1331 (1988), by presenting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

junctive relief, imposed a constructive trust upon the assets of the defendants. The court also appointed a receiver to manage the assets of two groups of defendants.

The appeals before us, which we have consolidated for decision, are from orders of the district court modifying the constructive trust to permit some of the defendants to pay their lawyers for representation in this litigation. The plaintiff contends that the district court abused its discretion in allowing such payments from assets subject to the trust. Because we conclude that the district court had no lawful authority to impose the constructive trust or otherwise to attach the defendants' assets—and thus to prevent the defendants from using their assets to pay counsel—we affirm.

### I.

### A.

This case arises out of a series of transactions involving carpet yarn that began in 1989.[2] The transactions were structured by a small circle of individuals: Joseph L. Smith, the owner of Sun–Fibres, Inc. ("SFI"); Charles W. Jones and Robert E. Lee, the owners and operators of Cardinal Textile Sales, Inc. ("Cardinal") and General Sales & Leasing Co. ("General"), respectively; and two employees of Mitsubishi International Corporation ("Mitsubishi"), Raymond B. Lippincott, III, and Mary Ellen Lee, who managed the textile trading department in the company's Atlanta branch.

At the outset, the transactions were arranged as follows. Mitsubishi (from its Atlanta, Georgia, office) purchased carpet yarn from SFI and sold it on open account to Cardinal and General, two textile brokerage companies located in Dalton, Georgia.[3] Cardinal and General, in turn, sold the yarn to SFI's supplier, Purvis Sikkelee International, Ltd.[4] Apparently unknown to Mitsubishi management, but with the assistance of Mitsubishi employees Lippincott and Lee, the defendants thus established a circular series of yarn transfers that was repeated numerous times over the ensuing two years.[5]

Mitsubishi paid SFI for the yarn it purchased through accounts established at Mitsubishi's bank. Payment was made on each transaction when SFI presented the bank with a set of documents, including a Mitsubishi purchase order and a packing list/bill of lading indicating that the yarn had been

---

18 U.S.C. § 1964 (1988). The plaintiff also presents several pendent claims under state law.

2. The facts we relate are drawn from the pleadings, affidavits, and transcripts of evidentiary hearings and depositions contained in the record on appeal; of course, our description of the facts is not binding on the district court as the actual facts will be established later at trial. Thus, "what we state as 'facts' in this opinion for purposes of reviewing the [challenged] rulings ... may not be the actual facts. They are, however, the facts for present purposes, and we set them out below." *Swint v. City of Wadley*, 5 F.3d 1435, 1439 (11th Cir.1993). It should be noted that the district court has consistently credited Mitsubishi's version of events. We do likewise.

3. Although Smith represented to Mitsubishi that SFI was purchasing the yarn from the E.I. Du-Pont Company, his suppliers were actually other affiliated textile companies in Dalton—namely, Purvis Sikkelee International, Ltd. and Skein Dyers of America, Inc. (hereinafter, collectively referred to as "PSI").

4. In this process, the defendants repeatedly shipped the same yarn products while obtaining new funds from Mitsubishi for each transaction; documentation identified new shipments of yarn while the goods were actually the same products that had been recycled between PSI and Cardinal or General. This fact was concealed from Mitsubishi because the yarn was shipped from PSI to a warehouse and then directly to Mitsubishi's customers.

5. Mitsubishi also contends that, while this series of carpet yarn transactions was in progress, Smith devised a second, subsidiary scheme to defraud Mitsubishi. In what it terms the "Kevlar Scheme," Mitsubishi agreed to purchase a product known as aramid fiber, or Kevlar, from SFI for resale to various defense contractors. Smith represented that SFI purchased the Kevlar from DuPont, whereas the paperwork was in fact entirely fictitious (no Kevlar actually existed). Mitsubishi forwarded money to SFI for the purchase of the textiles but was never paid by its customers because no Kevlar was ever delivered; as in the yarn transactions, Mitsubishi advanced millions of dollars based upon the defendants' misrepresentations.

shipped to Mitsubishi's customer. Meanwhile, as was noted above, Cardinal and General were to pay Mitsubishi for the textiles on open account, the terms of which are not important here. In effect, through this financing arrangement, Mitsubishi extended credit for these transactions to its carpet yarn customers.

In 1990, SFI stopped shipping yarn altogether.[6] The transactions, however, continued on paper; SFI used false bills of lading to obtain payment from Mitsubishi's bank. SFI, Mitsubishi's customers (Cardinal and General), and the other defendants who were participating with them in the scheme all shared in the money made available by Mitsubishi under the financing arrangement established for the yarn transactions. For a time, while the yarn was still being shipped, Cardinal and General paid for some of the textiles.[7] By the time Mitsubishi brought this suit, however, the Cardinal and General accounts with Mitsubishi were several million dollars in arrears.

### B.

In an attempt to recover the arrearage, Mitsubishi brought this suit on July 3, 1991, in the United States District Court for the Northern District of Georgia against Cardinal, General, SFI, and several other parties whom it alleged had collaborated with those defendants in the scheme described above. As amended, Mitsubishi's complaint states causes of action in contract and tort. The

complaint's terminology, however, is somewhat confused because it labels both bases for recovery and alternative remedies as "counts."[8] When examined closely, the complaint presents the following claims for relief: claims against Cardinal and General for breaching their respective promises to pay for the yarn Mitsubishi sold them and for accounts stated; claims against Lippincott and Ellen Lee for breaching their "duty of loyalty" as employees to Mitsubishi; claims against Cardinal and General, and against SFI, for fraud (the allegation being that those defendants fraudulently induced Mitsubishi to sell yarn to Cardinal and General by falsely representing that they would pay for the goods); and claims against all of the defendants under the federal and state RICO statutes based essentially upon such fraudulent misrepresentations.

In addition to these theories of recovery, the complaint also seeks, as equitable remedies but not as independent grounds of liability, the imposition of a constructive trust, an equitable accounting, and the appointment of a receiver. Taken collectively, the application in the complaint for this equitable relief asks the district court to impose a constructive trust on the defendants' assets so that funds will be available with which to satisfy any money judgment that might ultimately be rendered against one or more of the defendants; the appointment of a receiver would facilitate that process.

---

6. At this point, the conspiring defendants phased out the participation of PSI in the operation and began using two companies affiliated with Cardinal and General (United General Marketing, Inc., and Classic Sales) as the "suppliers." Fibertex Textile Supplies, Inc., owned by Hershel Nunley, became involved as an ostensible source of yarn as well.

7. Lippincott and Ellen Lee, who were paid kickbacks per pound of yarn allegedly shipped by SFI, disguised the nature of these transactions from Mitsubishi management. Cardinal and General did make some token payments to Mitsubishi for their purported yarn purchases in order to induce Mitsubishi to provide more money to finance further textile transactions. But Lippincott and Lee concealed the fact that the purchasers were not paying all of their invoices by manipulating Mitsubishi's in-house accounting systems.

8. Mitsubishi's amended complaint contains ten counts, including claims for: damages resulting from common law conversion, fraud, and conspiracy to defraud under Georgia state law (counts I–III); damages for breach of a duty of loyalty by Lippincott and Ellen Lee (count IV); the imposition of a constructive trust and equitable lien over the misappropriated monies and property purchased therewith by the defendants (count V); treble damages and injunctive relief under the federal and state RICO statutes (counts VI and VII, respectively); accounts receivable owed by Cardinal, General, Robert Lee, and Jones (count VIII); an equitable accounting under Georgia law (count IX); and the appointment of a receiver over the defendants to protect the assets allegedly misappropriated from Mitsubishi (count X).

On the same day it filed its complaint, Mitsubishi petitioned the district court for a temporary restraining order to protect the assets of the defendants that Mitsubishi alleged it owned by operation of a constructive trust. The district court granted Mitsubishi's motion after a short hearing, concluding that:

> It appears to the Court that Plaintiff Mitsubishi ... has a substantial likelihood of prevailing on the merits of one or more of its claims against Defendants; that immediate and irreparable injury, loss or damage will result to Plaintiff unless a restraining order is issued against Defendants; that the threat and injury to Plaintiff substantially outweigh any threat and harm the injunctive relief may do the Defendants; and granting injunctive relief will serve the public interest.

The court then froze a significant portion, albeit perhaps not all, of the assets of the defendants in an apparent attempt to ensure that any unlawfully obtained funds would be secured. The temporary restraining order provided as follows:

> [P]ending a hearing on Plaintiff's Motion for Preliminary Injunction, or further Order of the Court, the Defendants ... are temporarily restrained from dissipating, transferring, pledging, encumbering, selling, disposing of, or making any other use of any and all monies received, directly or indirectly, from Joseph L. Smith or [SFI]; any and all monies received, directly or indirectly, as a result of yarn or fiber transactions involving Mitsubishi or Mitsubishi funds; and any and all real or personal properties purchased in whole or in part with such monies. This Order extends to all such monies wherever they may be traced and whether kept separate or commingled with other monies.

The district court's order also required an immediate equitable accounting of the relevant funds and granted Mitsubishi's request for expedited discovery. The temporary restraining order subsequently was extended several times by consent of the parties so that they could prepare for a later preliminary injunction hearing.[9]

On August 6, 1991, Mitsubishi petitioned the court for the immediate appointment of a receiver "to take control, custody and management of the business and assets" of General and Cardinal "for the purposes of preserving the assets of said Defendants, in which Mitsubishi has an equitable interest pursuant to a constructive trust or an equitable lien...." Following a two-day evidentiary hearing held on August 13–14, 1991, the district court granted Mitsubishi's motion on August 22, finding that "plaintiff ha[d] shown a substantial likelihood of prevailing on its claims that assets in the possession or control of defendants ... should be impressed with a constructive trust in favor of plaintiff, and in order to marshal, protect, and preserve such assets." A receiver was appointed with broad authority to manage the assets and businesses of Cardinal and General under the direction of the court.

These appeals arise out of the district court's decision to allow the appellees to pay their attorneys with funds that had been subjected to the temporary restraining order. On August 9, 1991, before the receiver was

---

**9.** At oral argument, counsel advised the court that the temporary restraining order (as modified by the attorneys' fee orders challenged here) had been supplanted by a preliminary injunction issued by the district court on October 27, 1992. (We note in passing, *infra* note 14, that the temporary restraining order was itself in the nature of a preliminary injunction.) As represented to us, the 1992 preliminary injunction preserves the controls on the defendants' assets (the constructive trust, the receivership, and the exemptions for attorneys' fees) that are at issue here.

The new order of the district court does not render these appeals moot. Mitsubishi challenges three orders of the district court that allow the appellees to pay counsel fees from their assets that are subject to the constructive trust. We explain in part II, *infra*, that these orders in essence constitute appealable denials of Mitsubishi's requests for more extensive injunctive relief. Although we necessarily discuss the terms of the temporary restraining order and receivership order, which form the backdrop for the controversies at issue here, those asset controls are not directly challenged in these appeals. Accordingly, the fact that a new preliminary injunction has been issued does not affect our inquiry. Each denial of injunctive relief is independently appealable; a subsequent denial of the same request may be appealable in its own right, but it does not affect the merits of an earlier challenge.

appointed, General filed an Application for Allowance of Reasonable Compensation and Disbursements to their counsel for the period commencing with the issuance of the temporary restraining order on July 3. Cardinal filed a similar request several days later. Both petitions asked the district court to modify its temporary restraining order to allow reasonable compensation to counsel for the defendants.

In its August 22 receivership order, the district court granted the requests of Cardinal and General that payment of interim attorneys' fees be allowed from the funds subject to the original temporary restraining order. Over Mitsubishi's objections, the court ordered that "[General and Cardinal] shall be permitted to pay reasonable counsel fees and expenses for their defense of this action," subject to review of the attorneys' invoices by the receiver as well as approval by the court. More importantly, the order purported to preclude Mitsubishi from ever seeking disgorgement of these interim attorneys' fees once they were paid. The court decreed that "any funds paid to the attorneys for the Receiver Entities pursuant to this order shall be released from any restraint or constructive trust and plaintiff shall not seek

to have them disgorged, repaid, or refunded at any time...." [10]

In appeal number 91–8775, Mitsubishi appeals that portion of the receivership order that governs attorneys' fees. Specifically, Mitsubishi appeals the section that "(i) authorizes payment of attorneys' fees to counsel for certain defendants [Cardinal and General], (ii) releases funds paid to these attorneys from 'any restraint or constructive trust,' and (iii) forbids [Mitsubishi] from seeking disgorgement, repayment, or a refund of those released funds at any time." In appeals number 91–8900 and 92–8192, Mitsubishi challenges two virtually identical orders entered on October 1, 1991, and February 14, 1992; these orders preclude Mitsubishi from recovering counsel fees paid by PSI and Fibertex Textile Supplies, respectively. We consolidated all three appeals for decision because each underlying order is identical in substance—awarding interim attorneys' fees and exempting the funds paid by the appellees from the operation of the court's temporary restraining order—and differing only insofar as they apply to different sets of appellees.[11] By the time of oral argument, substantial amounts of money had been paid to defense counsel under these orders.[12]

---

**10.** The district court indicated its reasoning behind this portion of the Receivership Order during proceedings in open court on August 19, 1991. The court explained:

> I am going to pay the attorney fees or permit them to be paid out of the particular defendants' accounts. It might be Mitsubishi money, but that has not been established yet, so certainly for the time being the receiver will be authorized to issue checks on those particular accounts to pay defendants' attorneys.
>
> . . . . .
>
> I am not going to authorize, as I indicated earlier, the payment of any funds in defense of the criminal action [resulting from the same alleged scheme to defraud Mitsubishi], but certainly the civil action, until there is some adjudication here, even though there might be a fairly clear indication these funds are Mitsubishi funds, I think these people are entitled to employ attorneys without the chilling effect of having the attorneys face the possibility of returning the funds.

**11.** The appellees fall into several clusters according to their roles in the transactions described by Mitsubishi, as well as according to the counsel fees order by which they were permitted to dis-

burse their own assets to pay their defense costs. They are: (1) Cardinal Textile Sales, Inc., Consolidated Trading Co., United General Marketing, Inc., and Charles W. Jones; (2) General Sales & Leasing Co., Classic Sales, and Robert E. Lee; (3) Purvis Sikkelee International, Ltd., Skein Dyers of America, Inc., William J. Purvis, and William L. Sikkelee; and (4) Fibertex Textile Supplies, Inc. and Hershel Nunley. Mitsubishi's motion voluntarily to dismiss the appeals as to the Fibertex Defendants was granted on December 2, 1992.

In the discussion of the challenged attorneys' fee orders that follows, we use the name of the principal business entity, e.g., "Cardinal" or "PSI," to refer to the appropriate enumerated group of related defendants in its entirety.

**12.** Between October 1, 1991, and May 1, 1992, the district court authorized the release of over $625,000 to counsel for General and Cardinal. In addition, counsel for PSI was allowed to draw down almost $95,000 of their $250,000 retainer on October 1, 1991. The fee applications by Fibertex are under seal, but the court has authorized payment of fees to their attorneys on three occasions.

In these appeals, we must decide whether the district court erred when it awarded attorneys' fees to counsel for the appellees and exempted such fees from the provisions of the temporary restraining order as well as the operation of any constructive trust that might be impressed on final judgment.

## II.

■ Because Mitsubishi seeks interlocutory appellate review of pretrial district court orders, we initially must decide whether we have jurisdiction over these consolidated appeals. Under the final judgment rule, a preliminary determination during the course of trial court proceedings ordinarily is not reviewable by an appellate court until an ultimate judgment has been rendered in the case. However, "[a]n order involving injunctive relief issued prior to the entry of a final judgment generally may be appealed under the statutory exception to the final judgment rule embodied in § 1292(a)(1) of the Judicial Code." 11 Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2962, at 612 (West 1973).[13] Accordingly, we must examine the nature of the orders from which Mitsubishi appeals to determine whether they constitute appealable orders involving injunctive relief.

■ Although it is not always an easy task properly to characterize a district court's interlocutory orders, such a determination is crucial under the relevant statutory and decisional law defining appellate court jurisdiction. Final judgments and collateral orders are appealable, for example, but nonfinal orders are not; preliminary injunctions are appealable but temporary restraining orders are not.[14] Indeed, it may not always be clear that the court has rendered a decision

relating to an injunction at all. It is well-established, however, that:

> [A] district court may not avoid immediate review of its determination simply by failing to characterize or label its decision as one denying or granting injunctive relief. For example, when a court declines to make a formal ruling on a motion for a preliminary injunction, but its action has the effect of denying the requested relief, its refusal to issue a specific order will be treated as equivalent to the denial of a preliminary injunction and will be appealable.

11 Wright & Miller, *supra*, § 2962, at 614. *See also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287–88, 108 S.Ct. 1133, 1142–43, 99 L.Ed.2d 296 (1988) (explaining that section 1292(a)(1) "provide[s] appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence' " (citation omitted)).

Several decisions illustrate the operation of this principle that appellate courts evaluating their jurisdiction should examine the effect, and not merely the letter, of interlocutory district court orders to be reviewed. In *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), for example, the district court denied a joint motion of the parties for entry of a consent decree that included provisions for injunctive relief. The Supreme Court held that the lower court's ruling was appealable under section 1292(a)(1) because, "[a]lthough the District Court's order declining to enter the proposed consent decree did not in terms 'refuse' an 'injunction,' it nonetheless had the practical effect of doing so." *Id.* at 83, 101 S.Ct. at 996. *See also Rolo v. General Dev.*

---

**13.** Section 1292(a)(1) provides that the courts of appeals have jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1) (1988).

**14.** It should be noted, however, that this court is not bound to accept a district court's characterization of its own rulings. As we have explained, "[a]lthough a temporary restraining order is not

ordinarily appealable, where the order has the effect of a preliminary injunction this court has jurisdiction to review the order and is not bound by the district court's designation of the order." *Haitian Refugee Center, Inc. v. Baker*, 950 F.2d 685, 686 (11th Cir.1991). In our view, the temporary restraining order entered in this case had the effect of a preliminary injunction because it did not merely preserve the status quo but instead granted affirmative relief. We add, however, that articulating this view is unnecessary to our disposition of these appeals.

*Corp.*, 949 F.2d 695, 703 (3d Cir.1991) (reviewing district court's order that, although not labelled as such, had "practical effect" of refusing preliminary injunction). Appellate courts have even identified appealable denials of preliminary injunctions in rare cases in which the district court in fact issued no order at all. In *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir.), *cert. denied*, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125 (1962),[15] the trial court had failed to enter a temporary injunction for months, despite repeated applications by the government. The court of appeals concluded that "[t]he movant, under such circumstances, was clearly entitled to have a ruling from the trial judge, and since he did not grant the order his action in declining to do so was in all respects a 'refusal,' so as to satisfy the requirements of Section 1292...." *Id.*

■ Under the foregoing set of principles, this court is vested with flexibility in characterizing the orders from which Mitsubishi appeals; we are not cabined by the district court's terminology. The precedents cited above demonstrate that a reviewing court will look at the actual effect of an order that was issued by a district court when determining whether an appeal should be allowed under section 1292(a)(1).

■ As noted above, the parties in this case consented to the extension of the court's July 3, 1991, temporary restraining order that, through its broad wording, essentially froze the assets of the defendants pending trial. Thus, no controversy exists over the terms of that order. For the court's purposes, the parties had agreed to freeze those assets for a period of time. The practical effect of the appellees' applications for reasonable counsel fees, however, was to withdraw their consent to at least part of the restraining order; when the district court issued the appealed-from orders concerning counsel fees, it modified the consent order at the application of several of the enjoined parties. Mitsubishi had originally sought a preliminary injunction governing all assets of the defendants that were connected in any way to the money spent by Mitsubishi in the textile transactions. In opposing the appellees' counsel fee applications, Mitsubishi continued to urge this position on the district court. Hence, the attorneys' fee orders at issue here constitute denials, in part, of Mitsubishi's requests for injunctive relief. As such, they are appealable under section 1292(a)(1).[16]

The circumstances surrounding the district court's rulings on the counsel fee applications support our conclusion that the appealed-from orders constitute denials of Mitsubishi's request for a preliminary injunction. First, the court's orders are not transitory or effective merely for a period of time too brief to allow an appeal. Rather, they governed the conduct of the parties for months. More importantly, the district court issued its orders only after hearing from all parties. The attorneys' fee issue was briefed extensively

**15.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**16.** Mitsubishi contends that this court has jurisdiction to review the district court's orders under 28 U.S.C. § 1291, before litigation on the merits is complete, because the orders are final and collateral to the main litigation. To be appealable under the collateral order doctrine, as established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), a district court ruling must: (1) conclusively determine the issue in dispute; (2) resolve a question that is both important and completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment in the case. *See*

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n*, 849 F.2d 1389, 1392 (11th Cir.1988).

If any one of the *Cohen* criteria is not met, this court may not invoke jurisdiction under the collateral order exception to the final judgment rule. *Gulfstream*, 485 U.S. at 276, 108 S.Ct. at 1137; *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1566 (11th Cir.1987). Because, as the appellees point out in their briefs, the instant appeals raise difficult questions under all three prongs, we believe that section 1292(a)(1) provides the better ground of jurisdiction for this court.

We also find it clearer to view these matters as appeals from denials of the injunctive relief requested by Mitsubishi and not, as seen from the other side of the coin, as appeals from modifications of a consent order at the request of certain enjoined defendants.

and the court had the benefit of several hearings on related issues when it made its decision; the district court had the opportunity fully to examine the merits of the parties' claims on this issue. Accordingly, it is appropriate to treat the district court's orders as denials of a preliminary injunction. *See, e.g., Sampson v. Murray*, 415 U.S. 61, 86–87 & n.58, 94 S.Ct. 937, 951 & n.58, 39 L.Ed.2d 166 (1974) (classifying court's order as preliminary injunction "where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged"); *Haitian Refugee Center*, 950 F.2d at 686 (treating an order denominated as temporary restraining order as, "in effect," preliminary injunction after court had heard from all parties and issue had been briefed).

### III.

■ We review a district court's denial of a preliminary injunction under an abuse of discretion standard. *Cafe 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627 (11th Cir. 1992). Appellate review of such a decision is justifiably limited because "the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success ... with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Revette v. Int'l Ass'n of Bridge Works*, 740 F.2d 892, 893 (11th Cir.

1984) (citation omitted). As we review the denial of the preliminary injunction, "no attention is paid to the merits of the controversy beyond that necessary to determine the presence or absence of an abuse of discretion." *Cafe 207*, 989 F.2d at 1137 (citation omitted).

■ This court "may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." *Powers v. United States*, 996 F.2d 1121, 1123–24 (11th Cir.1993); *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 814 n.12, 104 S.Ct. 1495, 1501 n.12, 79 L.Ed.2d 826 (1984). Accordingly, we must examine all possible legal theories that properly could support the pretrial injunctive relief requested by the appellant and implicitly denied in the three challenged counsel fee orders issued by the district court.

■ Mitsubishi contends that the district court erred in awarding interim attorneys' fees to counsel for the appellees, and in exempting those fees from its temporary restraining order (as well as from any constructive trust that might ultimately be imposed after final resolution of the merits of the case). We first consider and reject the argument that the district court could have prevented the appellees from using their assets to pay their counsel fees under constructive trust law. We then turn to an alternative rationale that might be used to justify Mitsubishi's request: pretrial attachment.[17]

---

**17.** A third alternative theory, the use of injunctions in aid of a court's jurisdiction, can be quickly dismissed. The All Writs Act, 28 U.S.C. § 1651 (1988), provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The All Writs Act "provide[s] a federal court with various common law equity devices to be used incidental to the authority conferred on the court by rule or statute," but only "with those writs necessary to the preservation or exercise of its subject matter jurisdiction." *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1359–60 (5th Cir.1978) (citation omitted) (invalidating order that placed disputed funds in court registry and holding that "the fact that a party may be better able to effectuate its rights or duties if a writ is issued never has been, and under the language of the statute cannot be, a sufficient basis for issuance

of the writ"). Conduct not shown to be detrimental to the court's jurisdiction or exercise thereof cannot be enjoined under the Act.

The Supreme Court has also emphasized the limited use of injunctions in aid of a court's jurisdiction under the All Writs Act: "[a]lthough th[e] Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Corrections v. U.S. Marshals Serv.*, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985).

In this case, the actions taken by the district court are not indispensable to reaching a disposition of the case, and there was no need for the court to protect its jurisdiction. Service over the defendants has been properly obtained, and no party questions the jurisdiction of the district

**1518**

Because we find that the defendants' assets could not have been restrained under either of these theories on the facts now before us, we affirm the district court's orders.

## A.

Mitsubishi's argument on appeal is premised upon a mistaken and overly rigid view of constructive trusts: that Mitsubishi has an absolute and immediate right under Georgia constructive trust law to trace and recover any assets that were derived from Mitsubishi funds involved in the textile transactions described in part I.[18] Because a constructive trust is deemed to arise at the time of a fraudulent misappropriation, Mitsubishi contends that it was entitled to an immediate injunction preventing the dissipation of those assets—including payment of appellees' counsel fees—as well as the opportunity to seek disgorgement of any transferred funds. This position, however, fails to recognize that constructive trusts are not automatically impressed whenever one party owes another money, and it apparently overlooks the essence of the remedy—that constructive trusts are inherently equitable in nature and that equitable relief is available only in the absence of an adequate remedy at law.

The constructive trust, a creature of equity, is the "formula through which the conscience of equity finds expression." 5 Austin W. Scott, *The Law of Trusts* § 462, at 3413 (3d ed. 1967) (citation omitted). Indeed, a widely accepted definition holds that "[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id.* Georgia

law provides that "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53–12–93 (Michie Supp.1993).

It is axiomatic that equitable relief is only available where there is no adequate remedy at law, and there is nothing in the Georgia statutory or decisional law to indicate that ordinary maxims of equity jurisprudence do not apply.[19] Indeed, the Georgia Code specifically provides that "[e]quity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law." O.C.G.A. § 23–1–4 (Michie 1982). The Georgia Supreme Court has concluded that "equitable relief is improper if the complainant has a remedy at law which is 'adequate,' i.e., as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." *Mayor of Wadley v. Hall,* 261 Ga. 681, 410 S.E.2d 105, 106 (1991); *see also Stewart v. Walton,* 254 Ga. 81, 326 S.E.2d 738, 739 (1985) ("Equity will grant relief only where there is no available adequate and complete remedy at law.").

Cases in which the remedy sought is the recovery of money (whether as collection on a debt or as damages) do not fall within the jurisdiction of equity, 1 Pomeroy, *supra,* § 178, at 229, and the imposition of a constructive trust generally will not be the appropriate remedy. This principle holds even when the cause of action implicates fraud or some other characteristic that would other-

---

court to award the relief sought. Accordingly, the injunction here sought would not aid or protect the exercise of the court's powers. Nor, it is clear, was it intended to do so.

**18.** Neither the district court's rulings nor the pleadings of the parties in this case explicitly indicate under which causes of action the constructive trust was imposed. Accordingly, we assume that Mitsubishi seeks this remedy with respect to each cause of action stated in the complaint; it would be entitled to the relief sought if a constructive trust is appropriate to any claim. Tort claims are not litigated in equi-

ty, however, so Mitsubishi's tortious fraud and RICO claims, being legal claims, cannot sustain the imposition of a constructive trust. Accordingly, the discussion that follows focuses upon Mitsubishi's contractual claims.

**19.** Pomeroy, the author of a foundational treatise on equity, explains that "it has often been said by courts as well as by text-writers that the equity jurisdiction extends to and embraces all civil cases, and none others, in which there is not a full, adequate, and complete remedy at law." 1 John Norton Pomeroy, *Equity Jurisprudence* § 132, at 160 (4th ed. 1918).

wise trigger equity jurisdiction. As Professor Pomeroy explains:

> Even when the cause of action, based upon a legal right, does involve or present, or is connected with, some particular feature or incident of the same kind as those over which [equity] jurisdiction ordinarily extends, such as fraud, accounting, and the like, still, if the legal remedy by action and pecuniary judgment for debt or damages would be complete, sufficient, and certain—that is, would do full justice to the litigant parties—in the particular case, the concurrent jurisdiction of equity does not extend to such a case.

*Id.* at 230–31. *See also* 5 Scott, *supra,* § 462.3, at 3419 (explaining that "where money is obtained by fraud, it is held upon a constructive trust for the defrauded person; but if the remedy at law is adequate a suit in equity cannot be maintained against the fraudulent person").

In spite of this authority, Mitsubishi construes the Georgia constructive trust provision to mean that it equitably owns all assets fraudulently taken by the defendants and transferred to any third party, unless the third party paid value for the assets and lacked notice of the fraud at the time it accepted the assets.[20] None of the Georgia cases upon which Mitsubishi relies, however, involve the sort of contractual, commercial transactions for the sale of goods at issue in this case.[21] Furthermore, the Georgia Supreme Court has suggested in one case, *Bank of Dade v. Reeves,* 257 Ga. 51, 354 S.E.2d 131 (1987), that a constructive trust cannot be imposed for failure to keep implied promises when the parties' conduct is regulated by a contractual relationship. In that case, a mutual exchange of promises provided consideration for the contract between a bank (which held a lien on the debtor's business assets and home to secure the debtor's business loans), a debtor, and a trustee (who was appointed to sell the debtor's assets and to use the proceeds to retire his indebtedness). The court held that the bank's failure to fulfill its contractual obligations (namely, to monitor the sales\by the trustee for fairness to the debtor) could not support the imposition of a constructive trust; "[a]t most, there was a breach of contract by the bank," the court concluded. *Id.* at 133.

█ An examination of the record in this case reveals that Mitsubishi is not entitled to the equitable remedy of a constructive trust because it has an adequate remedy at law.[22] Although the facts as stated by Mitsubishi indicate possible fraud in this case, such fraud arose in the context of a contractual, commercial relationship between Mitsubishi and Cardinal and General, as well as between Mitsubishi and SFI. In the principal transactions, Cardinal and General misrepresented their own creditworthiness (their intent to pay for the yarn they purchased). As such, the remedy Mitsubishi should have sought is the recovery of money for breach of

---

20. The exemption for bona fide purchasers arises from O.C.G.A. § 23–1–20 (Michie 1982), which provides that "[a] bona fide purchaser for value without notice of an equity will not be interfered with by equity."

21. *Bateman v. Patterson,* 212 Ga. 284, 92 S.E.2d 8 (1956), which Mitsubishi emphasizes, involved a bankrupt financial institution that sold cashier's checks to a customer after it knew that it was insolvent. The court held only that "it was error for the trial judge to sustain a general demurrer interposed by the trustee in bankruptcy and also to sustain his motion to dismiss the amended petition" when the plaintiff sought the imposition of a constructive trust over the assets fraudulently obtained "for the purpose of increasing the assets of the insolvent bank." *Id.* at 10.

In addition, two of the cases cited by Mitsubishi employed constructive trusts where parties to a confidential relationship misappropriated or embezzled funds. *See First Nat'l Bank of Cartersville v. Hill,* 412 F.Supp. 422, 425 (N.D.Ga.1976) (bank president who embezzled funds from bank holds property purchased therewith as constructive trustee); *Adams v. McGehee,* 211 Ga. 498, 86 S.E.2d 525 (1955) (upholding appointment of receiver and issuance of preliminary injunction where bookkeeper appropriated funds received from doctor's patients for her own use). And two older cases relied upon by Mitsubishi concern the fraudulent conveyance of land and the imposition of implied trusts over the disputed property itself. *See Hancock v. Hancock,* 205 Ga. 684, 54 S.E.2d 385 (1949); *Pittman v. Pittman,* 196 Ga. 397, 26 S.E.2d 764 (1943).

22. Furthermore, as mentioned above, a constructive trust is not ordinarily available in an action on a debt or in an action to recover money damages for fraud, whether at common law or under the RICO statutes.

a promise to pay or for an account stated (and not the imposition of a constructive trust). There is no indication in this case that a legal remedy would not be sufficient to vindicate Mitsubishi's rights since it seeks the payment of a debt (along with the statutory damages provided by the federal and state RICO laws). Moreover, if any defendant is held liable in this case, Mitsubishi will have all of the rights of a judgment creditor in Georgia. *See* Fed.R.Civ.P. 69.

■ The law is clear as to the remedies available to a party who has been fraudulently induced to enter into a contract: the defrauded party may either rescind the contract or stand on the agreement and seek to recover damages. *See generally* 12 Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts* §§ 1526–28 (3d ed. 1970). That is, as Georgia courts have held, "[t]wo actions are available to one who was fraudulently induced by misrepresentations into entering a contract: he can affirm the contract and sue for breach or seek to rescind and sue in tort for fraud and deceit." *Carpenter v. Curtis*, 196 Ga.App. 234, 395 S.E.2d 653, 655 (1990). Courts ordinarily insist that a party seeking to avoid a fraudulently induced contract tender the consideration it has received (here, the evidence of indebtedness provided by the purchasers of the yarn) and demand restitution of the consideration it has given (here, the yarn itself); absent such an election, the contract is deemed to remain. As Professor Williston has explained:

> It is generally said that a defrauded party must elect whether he will affirm the fraudulent transaction or rescind it. But a transaction although induced by fraud is not on that account void; it is only voidable. Consequently, if nothing is done, the transaction is not avoided, and the rights of the parties will be fixed by the agreement which they made without any manifestation of election.

12 Williston, *supra*, § 1526, at 622. Furthermore, "[t]he retention or use of the subject matter of the fraud is generally considered a conclusive choice of the substantive right of affirmance," *id.*, § 1528, at 632; *see also Brown v. Techdata Corp.*, 238 Ga. 622, 234 S.E.2d 787, 791 (1977). Here, Mitsubishi has attempted to sue on the debt owed it by Cardinal and General (in its accounts receivable action, count VIII of the amended complaint) and has not pursued a proper action for rescission.

We therefore conclude that the district court did not abuse its discretion by allowing the appellees to use their assets to pay their attorneys' fees. Mitsubishi's claims in this case are essentially contractual in nature. Since Mitsubishi possesses an adequate remedy at law, the equitable remedy of a constructive trust is not available to it.

### B.

When stripped of the rhetoric of misappropriated assets and constructive trusts, Mitsubishi's complaint essentially seeks the payment of a debt and damages for fraud. Cardinal and General are indebted to Mitsubishi because they failed to pay for the yarn they purchased; in addition, they and the remaining defendants may be liable to Mitsubishi for any fraud they may have committed. Based upon these facts, Mitsubishi states a claim for a money judgment in the form of liquidated damages for breach of the promises to pay or for accounts stated, and in the form of unliquidated damages for any injury caused by fraud. In opposing the counsel fee orders at issue in these appeals, Mitsubishi seeks to tie up the appellees' assets in order to ensure that they will be able to satisfy such a judgment. The temporary restraining order to which the parties consented at the outset of this case was akin to a prejudgment writ of attachment, presented in the form of an injunction against the defendants.[23]

In reality, therefore, Mitsubishi is appealing the district court's refusal to extend the

---

23. Furthermore, the district court appointed a receiver to oversee the assets of Cardinal and General for the stated purpose of protecting the assets in their possession—so that those assets might later be impressed into a constructive trust and/or used to pay any money judgment ulti- mately obtained by Mitsubishi. The receivership order was not limited to assets received from Mitsubishi (or proceeds therefrom) because the court had not yet determined whether the disputed funds constituted "Mitsubishi money."

reasoning of that consent order by granting prejudgment attachment of the money paid to counsel for the appellees. Mitsubishi's strategy in this case is to tie up all of the debtors' assets while the parties litigate the issues of indebtedness, breach of promises to pay, potential RICO violations, and the other claims for damages outlined in the complaint. Accordingly, we believe that the proper inquiry before us is whether the district court abused its discretion in declining to issue orders (as requested by Mitsubishi) that would have operated, in effect, to attach the assets used by the defendants to pay their attorneys' fees. As is so often the case, "[w]hen the right point of view is discovered, the problem is more than half solved." *Ellison v. Georgia R.R. Co.,* 87 Ga. 691, 13 S.E. 809 (1891) (Bleckley, C.J.).

■ Under the circumstances of this case, the remedy implicitly sought by Mitsubishi when it opposed the applications for counsel fees by various defendants was equivalent to a writ of attachment. When faced with motions appearing to call for an attachment but labelled something else, federal courts again look past the terminology to the actual nature of the relief requested. *See, e.g., Lechman v. Ashkenazy Enter., Inc.,* 712 F.2d 327, 329–30 (7th Cir.1983); *Ashland Oil Co. v. Gleave,* 540 F.Supp. 81, 83 (W.D.N.Y.1982) ("It is plain that attachment is the relief sought by plaintiff notwithstanding its labelling as a preliminary injunction; moreover, were it not simply improperly labelled it would be no less necessary to treat plaintiff's motion as one for attachment because the preliminary injunction would be equivalent to an attachment order and thus subject to state law under rule 64's last sentence."). As is the case when we evaluate our jurisdiction, we will call a duck a duck when characterizing district court rulings in this context.

■ Attachment is an ancillary remedy by which a plaintiff acquires a lien upon the property of a defendant in order to obtain satisfaction of a judgment that the plaintiff may ultimately obtain at the conclusion of the litigation. In general, "the writ of attachment is used primarily to seize the debtor's property in order to secure the debt or claim of the creditor in the event that a judgment is rendered." *Black's Law Dictionary* 115 (5th ed. 1979). Ordinarily, "[t]he general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litig.,* 843 F.2d 821, 824 (5th Cir.1988) (relying upon the Supreme Court's decision in *DeBeers Consol. Mines Ltd. v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945)).

Rule 64 of the Federal Rules of Civil Procedure, however, authorizes the prejudgment attachment of property for the benefit of a plaintiff in certain situations. Rule 64 makes available to district courts "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action" and provides that, except as otherwise provided by the Constitution or an applicable federal statute, such remedies "are available under the circumstances and in the manner provided by the law of the state in which the district court is held." The rule expressly lists attachment as one such available remedy, along with "other corresponding or equivalent remedies, however designated." *See generally* 7 James W. Moore et al., *Moore's Federal Practice* ¶ 64.04[1] (2d ed. 1993); 11 Wright & Miller, *supra,* § 2932.

■ Hence, as the Supreme Court has explained, "long-settled federal law provide[s] that in all cases in federal court, ... state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70,* 415 U.S. 423, 437 n.10, 94 S.Ct. 1113, 1123 n.10, 39 L.Ed.2d 435 (1974). We conclude that Rule 64, and not Rule 65 (which governs injunctions generally), provides the standard for evaluating a request for preliminary injunctive relief that is, in reality, no more than a request for

prejudgment attachment; Rule 64 thus properly controls our disposition of these cases.[24]

 Mitsubishi did not invoke, and the district court did not at any time address, the Georgia attachment statute. Nor did the court make any findings of fact concerning whether the appellees would fall within the statute's restrictive grounds for prejudgment seizure of assets. In Georgia, prejudgment attachment is subject to the same conditions as postjudgment attachment in cases making demands in contract or in tort. Those conditions are found in the statutes of Georgia:

Attachments may issue when the debtor:

(1) Resides out of the state;

(2) Moves or is about to move his domicile outside the limits of the county;

(3) Absconds;

(4) Conceals himself;

(5) Resists legal arrest; or

(6) Is causing his property to be removed beyond the limits of the state.

O.C.G.A. § 18-3-1 (Michie 1991).[25] Based on the facts now before us, it does not appear that Mitsubishi is entitled to prejudgment attachment of the assets used by the appellees to pay counsel fees under the orders challenged in these appeals. The appellant has not demonstrated that any of the statutory grounds for attachment apply to the appellees in this case. Moreover, the Georgia statute speaks in permissive and not manda-

tory terms when granting courts the authority to order prejudgment attachment when these circumstances are present. Therefore, we conclude that the district court did not abuse its discretion in denying Mitsubishi's request for attachment of the assets used by the appellees to pay their attorneys when it issued the counsel fee orders.

## IV.

The unusual procedural posture of these appeals, and the foundational questions of judicial authority that they present, has led us to discuss broad principles of equity jurisprudence and federal jurisdiction—most of which are not new to this court or even to this century, having been well-established when Lord Eldon sat on the woolsack. In conclusion, and in the spirit of this opinion's return to the old books, we echo the language used by the Supreme Court nearly a half-century ago:

To sustain the challenged order[s] would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such. Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his

---

**24.** Where the state attachment statute does not authorize prejudgment attachment in a given case, a district court is not authorized under Rule 65 to attempt to accomplish the same result by issuing a preliminary injunction. Some federal courts have held to the contrary, *see, e.g., Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186 (3d Cir.1990), but we believe that such decisions are premised upon erroneous readings of *DeBeers* and federal procedural rules, as well as upon incorrect applications of basic equity jurisprudence.

In *Fredeman,* which involved civil RICO actions for treble damages, the Fifth Circuit reached the same conclusion concerning the availability of this type of preliminary injunction. In that case, the plaintiffs alleged that the defendants had systematically charged them for more fuel than had actually been delivered. Relying upon *DeBeers,* the court vacated a preliminary injunction that prohibited the defendants from transferring their assets. The court focused on the nature of the relief sought:

The plaintiffs seek only treble damages, and the district court based its injunction solely on

the need to protect those damage claims. The plaintiffs do not ultimately seek return of any particular asset or fund that the interim injunction might secure ..., nor do they seek to enjoin future illegal conduct.

843 F.2d at 825. On those facts, the court explained, "[t]he district court ... froze essentially all of the defendants' assets, effectively putting the defendants into involuntary receivership, based on unproven claims for unliquidated damages." *Id.* at 828. The court held that such prejudgment relief was inappropriate, and that the plaintiffs' only recourse was to state attachment law under Rule 64.

**25.** O.C.G.A. § 18-3-4 provides that:

In all cases where the plaintiff has commenced an action for the recovery of a debt and the defendant, during the pendency of such action, shall become subject to attachment, the plaintiff may have an attachment against the defendant; and all the proceedings in relation to the same shall be as prescribed in relation to attachments where no action is pending.

money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

*DeBeers*, 325 U.S. at 222–23, 65 S.Ct. at 1135 (invalidating preliminary injunction freezing defendants' assets in antitrust case in order to satisfy a potential contempt judgment). Prejudgment attachment of the type sought by Mitsubishi is simply not appropriate on the facts presently before us. Mitsubishi does not discuss or "distinguish *DeBeers* or the cases following it, but contend[s] primarily that the defendants are scoundrels who will try to escape judgment, an allegation that, even if true, would not justify the preliminary injunction." *Fredeman*, 843 F.2d at 826.

Because the district court had no authority to prevent the appellees from using their assets to pay their attorneys' fees, we hold that the court did not abuse its discretion in issuing the challenged orders.

AFFIRMED.

CARNES, Circuit Judge, concurring in part and dissenting in part:

I concur in part II of the majority opinion concerning our jurisdiction over this appeal. However, I dissent from parts III and IV of the majority opinion, because Georgia law does permit the imposition of a constructive trust as an equitable remedy for fraud in cases such as this one, and because the district court has the power to enter a preliminary injunction freezing the defendants' assets to preserve that equitable remedy. The first part of this opinion takes issue with the majority's holding that if Mitsubishi prevails, it is not entitled to a constructive trust under Georgia law; the second part takes issue with the majority's holding that a district court in Georgia lacks the authority to enter

a preliminary injunction freezing a defendants' assets in a fraud case.

## I. AVAILABILITY OF A CONSTRUCTIVE TRUST UNDER GEORGIA LAW

The majority, in part III of its opinion, asserts that a constructive trust is not ordinarily available under Georgia law in an action to recover money damages for fraud. The Supreme Court of Georgia has held to the contrary. In *Watkins v. Watkins*, 256 Ga. 58, 344 S.E.2d 220, 221 (1986), the court explained that:

> This court in *Middlebrooks v. Lonas*, 246 Ga. 720(2), 272 S.E.2d 687 (1980), held that a constructive trust or equitable lien can be imposed to obtain repayment of a loan when the loan was fraudulently procured and no adequate remedy is available at law. The court relied on OCGA § 53–12–26(2), which provides a trust will be implied "[w]here, from any fraud, one person obtains the title to property which rightly belongs to another." The court further held a promise made without a present intent to perform is a misrepresentation of material fact and is sufficient to support a claim of fraud. *Middlebrooks*, supra at 721, 272 S.E.2d 687. See also *Restatement of Torts, Second*, § 530(1), p. 64 (1977).

The principle announced in *Middlebrooks* was also reaffirmed in *Eason v. Farmer*, 261 Ga. 675, 409 S.E.2d 509, 511 (1991). The Supreme Court of Georgia—not Pomeroy, or Scott, or anyone who ever sat on a woolsack—is the ultimate arbiter of Georgia law and equity.

*Bank of Dade v. Reeves*, 257 Ga. 51, 354 S.E.2d 131 (1987), which the majority cites for the proposition that a constructive trust cannot be imposed for failure to fulfill contractual obligations, is inapposite. In that case, the Supreme Court reversed a trial court's decision to impose a constructive trust *because there was no fraud:*

> In imposing a constructive trust on the residential property in favor of the Reeves the trial court found there was a confidential relationship between the bank and the Reeves and the bank's action, considering

the relationship, amounted to innocent or constructive fraud. In our view there is no evidence in the record to support this finding. At most, there was a breach of contract by the bank.

*Id.* 354 S.E.2d at 133. Because the present case does involve fraud, it is *unlike Reeves* — where the court set aside a constructive trust—and is *like Middlebrooks* and *Eason* —where the availability of constructive trusts as a remedy for fraud was confirmed.

*Middlebrooks* involved a loan which the borrower had no intention to repay. According to the majority's own account of this case, Mitsubishi's situation is the same: as one part of the alleged scheme, Charles Jones and Robert Lee, who owned and managed Cardinal and General, respectively, filed false bills of lading to get Mitsubishi to extend them credit to buy yarn that did not exist; when they took out the loans, Jones and Lee had no intention of repaying the debt. The district court found that the

> Defendants concealed from Mitsubishi that the carpet yarn which Mitsubishi paid for was nonexistent in 93 percent of the transactions. Defendants misrepresented through documents, particularly invoices and packing lists, that yarn existed for every transaction with Mitsubishi. . . . The Jones and Lee defendants misrepresented to Mitsubishi who their final customers were and the fact that the Jones and Lee Defendants were making some payments to Mitsubishi for yarn which did not exist.

In short, the court found that there was an elaborate scheme to defraud Mitsubishi. Under Georgia law, the victim of a fraud is entitled to have a constructive trust imposed on the defendants' ill-gotten gain, if there is no adequate remedy at law. *Middlebrooks,* 272 S.E.2d at 689.

An equitable remedy is not foreclosed merely because " 'there is a remedy at law. It must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.' " *Ward v. Walker,* 222 Ga. 451, 151 S.E.2d 228, 230 (1966) (quoting *Atlantic Coast Line R.R. Co. v. Gunn,* 185 Ga. 108, 194 S.E. 365, 367 (1937)). In

addition to holding, erroneously, that a constructive trust is not an available remedy for fraud in Georgia, the majority also holds that Mitsubishi is not entitled to a constructive trust because it has an adequate remedy at law—namely, the availability of a suit for damages and all of the rights of a judgment creditor in the state of Georgia. The majority's position—that the rights of a judgment creditor in Georgia are necessarily adequate and therefore foreclose the imposition of a constructive trust—has already been rejected by the Georgia Supreme Court. In *Middlebrooks,* the court held that, because a judgment creditor takes subject to the rights of a previous mortgagee, while a plaintiff who establishes a constructive trust or an equitable lien does not, the legal remedy is inadequate. 272 S.E.2d at 689. In this case, the district court found, and the majority does not dispute, that the defendants had been dissipating Mitsubishi's funds, thereby threatening Mitsubishi's ability to recover its losses should it prevail at trial. The Georgia Supreme Court, whose holdings we cannot question, has held that there is no adequate legal remedy where the defendant threatens to dissipate its assets. *Southern Land, Timber, & Pulp Corp. v. Eunice,* 219 Ga. 338, 133 S.E.2d 345, 349 (1963) (holding that equity jurisdiction is properly invoked when plaintiff produces evidence that defendant may dissipate its assets). Mitsubishi's remedy at law is therefore inadequate, and an equitable remedy is appropriate.

The majority opinion, citing *Brown v. Techdata Corp., Inc.,* 238 Ga. 622, 234 S.E.2d 787, 791 (1977), also holds that in order to sue for damages for fraud, Mitsubishi should have sought to avoid the contract by tendering the consideration that it received (the evidence of indebtedness) and demanding restitution. However, a recent Georgia appellate decision emphasized that "[a]ffirmance of the contract by the defrauded party does *not* necessarily deprive him of the right to sue for damages for fraud." *Carpenter v. Curtis,* 196 Ga.App. 234, 395 S.E.2d 653, 655 (1990) (emphasis added). The majority has equated the remedy of restitution with that of money damages or a constructive trust. While Georgia law requires that a plaintiff

seeking restitution (such as the plaintiff in *Brown*) rescind the contract, there is no such requirement for those seeking a constructive trust. *Middlebrooks* and *Farmer* do not mention rescission or a tender requirement, and *Watkins* is flatly inconsistent with the idea. In *Watkins*, the Supreme Court of Georgia allowed the plaintiff to go forward with a fraud claim despite the fact that she was still holding a note evidencing the debt in question, which, under the majority's theory, would have defeated the claim. 344 S.E.2d at 221–22.

Furthermore, even if the rescission requirement did apply to this suit, a constructive trust would still be available. The majority has overlooked an important condition in *Brown*. *Brown* held that " '[a] contract may be rescinded at the instance of the party defrauded; but, in order to rescind he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract *if it be of any value.*' " *Brown*, 234 S.E.2d at 791 (quoting Ga.Code § 20–906, recodified at OCGA § 13–4–60) (emphasis added). Mitsubishi does not hold anything of value as a result of the fraudulent transactions that victimized it, so there is nothing of value to restore to the defendants.

Therefore, the majority is wrong: if Mitsubishi prevails at trial on its fraud claim, it will be entitled to the imposition of a constructive trust under Georgia law. For the reasons that follow, the majority is also wrong in concluding that a federal district court in Georgia lacks the power to enter a pretrial injunction freezing the defendants' assets in a fraud case.

## II. AUTHORITY OF THE DISTRICT COURT TO ENTER THE PRELIMINARY INJUNCTION FREEZING DEFENDANTS' ASSETS

The majority, expressing its willingness "to call a duck a duck," contends that the remedy Mitsubishi implicitly sought when it opposed the applications for counsel fees by various defendants was equivalent to a writ of attachment. Admittedly, under Fed. R.Civ.P. 64 and the Georgia attachment statute, the court could not have attached the money in question. However, one should not be quick to lend the majority a retriever the next time it goes duck-hunting; what the majority insists on calling an unauthorized writ of attachment is in fact a permissible preliminary injunction.

The majority's position was examined and rejected by the Sixth Circuit in *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97 (6th Cir.1982). The *USACO* court, affirming a district court's preliminary injunction freezing the defendants' assets, explained that attachment under Rule 64 is a process used to protect *damage* remedies, and does not apply to injunctions used to protect *equitable* remedies. *Id.* Because the district court in that case acted to preserve the plaintiff's equitable remedy, "defendants' arguments based on *DeBeers* " (which the majority also cites) "and [Fed.R.Civ.P.] 64 concerning the court's power to sequester assets as security for a potential damage award are inapposite. The injunction here preserves assets for which the defendants may be accountable under a constructive trust." *Id.* Exactly the same is true in this case. The Sixth Circuit's holding in *USACO* was endorsed by the Fifth Circuit in *FSLIC v. Dixon*, 835 F.2d 554, 560 (5th Cir.1987):

> [A]n injunction is not permissible to secure post-judgment legal relief in the form of damages. Such an injunction to secure future payment of possible money damages would be in the nature of a "prejudgment attachment" subject to Federal Rule of Civil Procedure 64, and through that rule to the strictures of state law.
>
> Nevertheless, case law *does* allow a district court to exercise its equitable power in ordering a preliminary injunction to secure an equitable remedy....

(internal citations and footnote omitted).

Under Fed.R.Civ.P. 65, federal law, rather than Georgia law, governs the grant of a preliminary injunction to preserve the relative positions of the parties until a trial on the merits can be held. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir.1991); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2943, at 390 (1973). This Circuit has al-

ready held that a district court has the power under Rule 65 to freeze a corporation's assets in order to preserve the status quo and future equitable remedies. *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655 (5th Cir.1975). We, of course, are bound by that decision. *E.g., Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (cases from the former Fifth Circuit are binding precedent in the Eleventh Circuit).

Our prior holding in *Meis* is entirely consistent with that of the other circuits that have considered the question. As the Sixth Circuit explained in its *USACO* opinion:

> The power of the district court to preserve a fund or property which may be the subject of a final decree is well established. We believe this rule is applicable in the present case where the district court found that the defendants' property was likely to be the subject of a constructive trust imposed for the benefit of the plaintiffs. *As the Supreme Court stated in* DeBeers, *"A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."* In *DeBeers* an injunction was held not to grant relief "of the same character" which might be granted finally because the injunction dealt "with property which in no circumstances can be dealt with in any final injunction that may be entered", and thus only served to secure a potential money judgment. *Id.* By way of contrast, in the present case the property subject to the injunction may well be dealt with by a final decree in equity requiring an accounting by the defendants as constructive trustees for the plaintiffs.

689 F.2d at 97–98 (emphasis added) (internal citations omitted) (quoting *DeBeers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 1134, 89 L.Ed. 1566 (1945)). *See also Dixon*, 835 F.2d at 560; *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir.1982); *Lynch Corp. v. Omaha Nat'l Bank*, 666 F.2d 1208, 1211–13 (8th Cir. 1981).

### III. CONCLUSION

Because the district court has the power under Georgia law to impose a constructive trust, it has the power under Rule 65 to grant a preliminary injunction, freezing the defendants' assets in order to preserve that remedy. No one suggested otherwise in this appeal until this Court pointedly raised the question in a request for supplemental briefing that came months after oral argument. The majority says that when the correct point of view is discovered, the problem is mostly solved, but we should question the correctness of a point of view that remained hidden for so long.

The district court found that there is a substantial likelihood that Mitsubishi will prevail at trial. But what good will that do it? Because of today's decision, Mitsubishi's ultimate victory is likely to be an empty one. The district court was convinced that an injunction was necessary, because the defendants in this case "have dissipated Mitsubishi's funds and engaged in artifices and deceits designed to conceal misappropriated funds rightfully belonging to Mitsubishi." Now, this Court has given the defendants a license to plunder and dissipate what is left of the equitable estate, and the district court will be powerless to stop it. If that result were required by law, it would be bad enough. Coming as it does when the law provides a means to prevent it, the result is worse still.

I dissent from the majority's holding that the district court lacked the power to impose a constructive trust on the defendants' assets in these circumstances, and I would have the Court proceed to decide the sole issue initially raised and argued by the parties in this appeal: whether the district court abused its discretion in permitting some constructive trust funds to be paid out for legal representation of the defendants.